**Shirley STALWORTH and Willie Stalworth, Deceased, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (COUNTY OF DELAWARE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 27, 2002.

Decided Dec. 16, 2002.

Reargument and or Reconsideration Denied Feb. 12, 2003.

---

Richard A. Weisbord, Philadelphia, for petitioner.

Robert F. Kelly, Jr., Media, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY SENIOR JUDGE FLAHERTY.

Shirley Stalworth (Claimant), the widow of Willie Stalworth (Decedent), petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) denying her Fatal Claim Petition. We affirm.

Pursuant to a Notice of Compensation payable, Decedent began receiving compensation benefits for the numerous physical injuries he sustained on February 20, 1993 when he fell down approximately twenty-eight steps while working for the County of Delaware (Employer) as a corrections officer. Subsequently, Decedent filed a Review Petition and a workers' compensation judge concluded that Employer was liable for the payment of Decedent's medical bills with regard to treatment of Decedent's "depression; psychiatric problems, and organic brain syndrome, arising from his February 20, 1993 work-related injuries." (11/06/97 WCJ Decision, Conclusion of Law No. 4). During the pendency of the Review Petition, Decedent committed suicide and died on August 26, 1996. Therefore, the workers' compensation judge also terminated Decedent's benefits. Thereafter, Claimant filed a Fatal Claim Petition seeking compensation benefits as a result of Decedent's death. Employer filed an Answer denying liability.

At the hearings before the WCJ, Claimant testified that she married Decedent on August 3, 1990 and that she was depen-

dent upon him for support. Claimant stated that before the February 20, 1993 work-related accident Decedent was "very outgoing and very happy and people liked him." (N.T. 2/15/00, p. 31). After the work-related injury, Decedent became very depressed and would not wash himself or brush his teeth. Claimant related that "[h]e felt as though he couldn't take care of his family. That he was worthless. That he was useless." (N.T. 2/15/00, p. 33). In addition, Decedent stopped socializing and withdrew from his family and friends. Claimant testified that Decedent was not under the care of a psychiatrist or psychologist because they could not afford one.

Earl Sutton, who is the night shift security supervisor for Misericordia Hospital, witnessed Decedent's suicide on the night of August 23, 1996. Mr. Sutton testified that he saw Decedent standing in front of the entrance to the hospital garage. When he approached Decedent, he noticed that Decedent was covered in a flammable liquid and had a lighter. Mr. Sutton tried to help Decedent by talking to him, and Decedent kept saying that he was upset because he lost his job and could not provide for his family. Mr. Sutton further testified that Decedent "was pretty much redundant with the theme that he couldn't provide for his family and that he had lost his job." (N.T. 2/15/00, p. 16). Philadelphia police and other security officers also arrived to try to help Decedent, but they were unable to stop Decedent from lighting himself on fire. Decedent died three days later from his self-inflicted injuries. The WCJ accepted the testimony of Mr. Sutton as credible.

In support of the Fatal Claim Petition, Claimant also presented the testimony of Samuel Romirowsky, Ph.D., a licensed clinical psychologist who treated Decedent from August 27, 1993 through November 15, 1993. Prior to his testimony, Dr. Romirowsky reviewed the prior workers' compensation judge decision granting Decedent's Review Petition, the depositions of Decedent and Claimant, the police reports regarding Decedent's suicide and Decedent's medical records for the three days he was in the hospital after he set himself on fire. Based on this review and his prior treatment of Decedent, Dr. Romirowsky concluded that "the work injury that he sustained on February 20th, 1993 was a substantial factor in causing [Decedent's] subsequent suicide." (N.T. 2/15/00, p. 55).

On cross-examination, Dr. Romirowsky confirmed that he was aware that Decedent suffered from depression prior to his work-related injury and that he was hospitalized for a substance abuse problem. However, Dr. Romirowsky stated that he had not reviewed these medical records. On re-direct examination, Dr. Romirowsky stated that "[t]he fact that there had been possibly a historical pre-existing condition does not diminish the impact of the injury itself that took place on February 20th of 1993 as having been found to be, if not the source, at least a substantial contributing source of [Decedent's] depression. So, it would not change my opinion with regard to the causal relationship between the work injury . . . and his ultimate suicide." (N.T. 2/15/00, p. 66).

In addition, the following exchange took place between the WCJ and Dr. Romirowsky at the hearings:

WCJ: Since you hadn't seen him since 1993 until August 23, 1996, when he committed the act, how difficult is it for you to get from where he was in November 1993, which is in your words, oblivious to his surroundings, to the point that he makes a conscious decision to harm himself? Isn't that quite a different status in behavior from someone who is

almost robot-like to some one who would really have to—I mean, you have to plan it, you have to bring the fluid, you have to bring the fire, and you have to get yourself to a location where it can actually happen where people can't put their hands on you and stop you? What were the intervening factors that may have gotten him to there?

Dr. Romirowsky: *I have no idea except to speculate.* Sometimes people who are in that mental state, aside from having very poor judgment, also have poor impulse control. I agree with Your Honor though that to plan the act takes some organizational skills. To pay attention to where, when, how.

(N.T. 2/15/00, pp. 73–74) (emphasis added). The WCJ rejected the testimony of Dr. Romirowsky as not convincing.

In opposition to the Fatal Claim Petition, Employer presented the deposition testimony of Wolfram Rieger, M.D., a board-certified psychiatrist. Dr. Rieger reviewed numerous records concerning Decedent, including medical records from before his work-related accident when he was hospitalized in 1985. Decedent's medical records from 1985 revealed that Decedent was abusing drugs and alcohol and that he was diagnosed with schizo-affective disorder. Dr. Rieger testified that schizophrenia "runs its own predictable course irrespective of life events that may occur. Furthermore, this diagnosis carries with it a guarded if not poor prognosis since the psychiatric literature indicates that 10 percent of all schizophrenics end their life through suicide." (N.T. 6/07/00, p. 18). These medical records also indicated that Decedent called the police and threatened to commit suicide. Therefore, Dr. Rieger concluded that Decedent's suicide was due to his schizophrenia rather than his work-related injury. On cross-examination, the following exchange took place:

Claimant's attorney: Doctor, what might [Decedent] have said that would convince somebody ... that it was his work and his being unemployed and unable to work that was triggering his suicide?

...

Dr. Rieger: Well, he would have just made it his case. That is that it is related to his work injury and he would have made statements that I have ready many times ...

Claimant's attorney: What if he was reacting not to the physical pain in particular but to his life situation?

Dr. Rieger: He would have stated that. He would have specified that.

Claimant's attorney: That would have perhaps lead you to believe that perhaps it was connected to his post injury post accident depression?

Dr. Rieger: I would certainly keep an open mind about it.

Claimant's Attorney: If he said I feel worthless. I can't work anymore. I've lost my job. Would something like that be likely to convince you?

Dr. Rieger: Well, Dr. Romirowsky quotes certainly people who claim that witness what he said in the end in statements like that were made but he was stating that his life was not worth living and that he was useless and not working. So if that's what you're driving at.

Claimant's attorney: That's exactly what I'm driving at.

Dr. Rieger: All right. You can bring in those people and have them testify. Right now it's just as objectionable as hearsay as everything else that you objected to.

Claimant's attorney: Doctor, you're an excellent lawyer.

Dr. Rieger: Thank you.

Claimant's attorney: So if they testified to that and you heard and reviewed their testimony, then I would—

Dr. Rieger: **I would reconsider my opinion.**

Claimant's attorney: Doctor, did anybody bother to give you a copy of the testimony that you almost certainly heard that statement?

Dr. Rieger: No.

Claimant's attorney: But it was nice of you to point out about the hearsay. It isn't hearsay. It was testified under oath.

(N.T. 6/07/00, pp. 44–46) (emphasis added). The WCJ accepted the testimony of Dr. Rieger as credible.

By decision and order circulated on October 31, 2000, the WCJ concluded that Claimant failed to meet her burden of proving that Decedent's death was causally related to his February 20, 1993 work-related injury. Accordingly, the WCJ dismissed Claimant's Fatal Claim Petition. Claimant appealed to the Board arguing that the testimony of Dr. Rieger was equivocal. In affirming the decision of the WCJ, the Board stated that "[e]ven though [Dr. Rieger] indicated that if it were true that such statements were made by Decedent, he would reconsider his opinion, Dr. Rieger did not say he would change his opinion, merely that he would re-evaluate his opinion. After Claimant's counsel stated that the statements made by Decedent prior to his suicide attempt were actually testified to under oath, the doctor, on redirect stated again that it was his opinion that Decedent's suicide was related to his

pre-existing mental condition, not his work injury." Claimant's appeal followed.[1]

On appeal, Claimant argues that the Board erred by affirming the decision of the WCJ because: 1) the testimony of Dr. Rieger is equivocal, 2) Dr. Rieger's testimony ignored the law of the case and 2) Dr. Rieger's testimony was based on medical reports which are inadmissible hearsay.

In order for a claimant to recover workers' compensation benefits under Section 307 of the Workers' Compensation Act (Act)[2] following the suicide of a decedent, the claimant must show that there was a "chain of causation" between the suicide and the work-related injury. In order to prove this causation, the claimant must demonstrate that: 1) the decedent suffered from a work-related injury, 2) the work-related injury caused the decedent to be dominated by a disturbance of mind of such severity so as to override normal rational judgment and that 3) such disturbance resulted in the decedent's suicide. *Lead v. Workers' Compensation Appeal Board (Sexton)*, 796 A.2d 431, 436 (Pa. Cmwlth.2002).

When making a determination as to whether an expert's testimony is equivocal, it is appropriate to examine the entire testimony of a witness as a whole rather than basing our decision on a fragment of testimony removed from its context. *Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee)*, 168 Pa.Cmwlth. 78, 650 A.2d 114, 117 (1994). A medical expert's testimony is unequivocal if, after providing a founda-

---

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 561.

tion, he testifies that he believes or thinks the facts exist. *Fye v. Workers' Compensation Appeal Board (Super Moche)*, 762 A.2d 428 (Pa.Cmwlth.2000). Furthermore, whether testimony is equivocal is a question of law that is fully subject to our review. *Moore v. Workers' Compensation Appeal Board (American Sintered Technologies, Inc.)*, 759 A.2d 945, 949 (Pa.Cmwlth.2000). Additionally, when a medical expert's opinion is based on an incomplete medical history, that opinion is, as a matter of law, incompetent. *See Chik-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678, 689 (Pa.Cmwlth.2002). *See also Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997).

▬▬▬ However, although we can and should evaluate the competency of testimony, it is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. Therefore, this Court may not overturn credibility determinations on appeal. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth. 1998). In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.*

The testimony of Dr. Rieger, Employer's witness, may have been incompetent as a matter of law under *Newcomer*. However, the fact that Claimant, not Employer, has the burden of proof here makes Dr. Rieger's incompetent testimony irrelevant. In support of our conclusion in this regard, we rely on *Manners v. Workers' Compensation Appeal Board (McDonald's Restaurant)*, 688 A.2d 786, 788 (Pa.Cmwlth.1997). In *Manners*, the claimant suffered an injury and filed a claim petition. The employer challenged the claimant's entitlement to benefits on the basis that the claimant's injury was due to a non work-related degenerative condition. Employer presented medical evidence in support of this contention, which was accepted as credible by the workers' compensation judge. Accordingly, the workers' compensation judge concluded that the claimant failed to sustain her burden of proof. However, the workers' compensation judge did not make any credibility determinations with regard to the claimant's medical expert. On appeal to the Board, the claimant argued that the testimony of employer's medical expert was speculative and uncertain with regard to causation. The Board rejected the claimant's argument and affirmed the order of the workers' compensation judge.

On appeal to this Court, we found that the testimony of the employer's medical expert was equivocal because he could not testify within a reasonable degree of medical certainty as to the cause of the claimant's injury. In contrast, the testimony of the claimant's medical expert was unequivocal and hence competent. However, we held that: "[a]lthough we find that the testimony of [the claimant's medical expert] was unequivocal and legally competent, we cannot review whether Claimant met her burden of proving causation because the WCJ did not specifically find whether [claimant's medical expert] was credible. We cannot, as an appellate court, make factual determinations concerning matters of credibility. Therefore, we cannot conclude whether the Board erred in affirming the decision of the WCJ dismissing Claimant's claim petition for failing to meet her burden of proof regarding causation." *Id.* at 789 (citations omitted). Accordingly, we remanded the case for further findings.

In this case, unlike *Manners*, we are not precluded from determining whether the WCJ and the Board erred because the WCJ did not fail to make any credibility determinations with regard to the testimony of Claimant's medical expert. Specifically, in Finding of Fact No. 12, the WCJ found that Claimant's medical expert, Dr. Romirowsky, "is not convincing as to his opinion that the Claimant's employment injury of February 20, 1993 was a substantial contributing factor to his suicide ... Dr. Romirowsky testified that he had not treated the Claimant since November 15, 1993, and upon questioning by the Court indicated that at the time the Claimant was not exhibiting behavior that would lead to suicide, *and that there would be no way other than to speculate how Mr. Stalworth reached a point of committing suicide.*" (emphasis added). The WCJ rejected the testimony of Dr. Romirowsky, and we may not overturn this decision on appeal. *Hoffmaster*. Thus, even disregarding Dr. Rieger's testimony, the WCJ had sufficient reason to conclude that Claimant failed to sustain her burden of proof because Claimant failed to produce any credible medical evidence to connect the work injury, by a chain of causation, to Decedent's death. Therefore, the WCJ did not err by denying Claimant's Claim Petition.[3]

■ Accordingly, the order of the Board is affirmed.[4]

Judge SMITH–RIBNER dissents.

### *ORDER*

AND NOW, December 16, 2002, the order of the Workers' Compensation Appeal

Board docketed at A00–2925 and dated April 29, 2002 is hereby AFFIRMED.

---

**3.** Because the WCJ had sufficient reason to deny Claimant's Claim Petition even without Dr. Rieger's testimony, we do not need to address Claimant's remaining arguments regarding Dr. Rieger's testimony.

**4.** This Court may affirm the order of a lower court if the result reached is correct without

regard to the grounds relied upon by that court. *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 765 A.2d 786, 787 (2001). Thus, although the Board may have incorrectly concluded that Dr. Rieger's testimony was unequivocal, we may still affirm the Board because it reached the correct result.