**INSERVCO INSURANCE SERVICES,**
**Petitioner**

v.

**WORKERS' COMPENSATION**
**APPEAL BOARD (PURE-**
**FOEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 17, 2006.
Decided June 13, 2006.
Reargument Denied Aug. 4, 2006.

Joseph F. Frattone, IV, Philadelphia, for petitioner.

Thomas More Holland, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Inservco Insurance Services petitions for review of an order of the Workers' Compensation Appeal Board denying a petition to terminate workers' compensation benefits filed by McSquared (Employer). In doing so, the Board reversed the adjudication of a Workers' Compensation Judge (WCJ) terminating the benefits of Donald Purefoey (Claimant). In this case, we consider whether Employer's medical expert offered equivocal testimony that failed to recognize Claimant's judicially established work-related injuries. We reverse the Board's order and reinstate the WCJ's adjudication.

Employer erects sets and platforms for trade shows at the Pennsylvania Convention Center in Philadelphia. Claimant worked for Employer as a general laborer and was primarily responsible for transporting materials and supplies and loading and unloading trucks. On October 30, 1999, Claimant sustained a work-related injury to his left foot after it got caught in the wheel of a forklift. Claimant filed a claim petition for workers' compensation benefits, which Employer contested. The case was assigned to WCJ Nancy Goodwin, who reviewed deposition testimony from Claimant's treating physician, Ronald B. Greene, M.D., and Employer's independent medical examiner, Harold D. Schoenhaus, D.P.M.

WCJ Goodwin granted the claim petition and made the following pertinent findings of fact:

9. Based upon Dr. Greene's examination and review of test results, his diagnosis is credible that as a result of the work injury, *Claimant sustained a post-traumatic tarsal tunnel syndrome and post-traumatic degeneration and instability of his Lisfranc's or tarsometatarsal joints.*

10. Dr. Greene is treating the Claimant for this crush injury which occurred at work on October 30, 1999 with anti-inflammatory medications and a custom molded orthotic for his shoes. However, the long term solution to this problem will be to fuse that joint, but the operation is very risky in that you can lose your foot in that operation, so Dr. Greene is trying to treat the injury with a custom molded orthotic for Claimant's shoe for as long as possible. *The instability in the tarsometatarsal joint is not going to reverse and is permanent.*

WCJ Opinion, 9/28/01, at 3 (emphasis added). WCJ Goodwin ruled that Claimant was entitled to receive compensation benefits for his work-related disability "as of October 30, 1999 and continuing until further order or agreement." *Id.* at 4. Employer did not appeal WCJ Goodwin's decision.

Employer filed a petition to terminate Claimant's benefits on December 24, 2003,

alleging that Claimant had fully recovered as of November 26, 2003. The matter was assigned to WCJ Scott Olin. Claimant testified on his own behalf and again offered deposition testimony from his treating physician, Dr. Greene. Employer also relied on the same expert, Dr. Schoenhaus, who testified regarding his second independent medical examination (IME) of Claimant on November 26, 2003. At that time, Dr. Schoenhaus obtained Claimant's history, took x-rays of both feet and conducted a physical examination. Dr. Schoenhaus offered the following relevant testimony on direct examination regarding the injuries previously established by WCJ Goodwin:

Q. Do you have an opinion within a reasonable degree of medical certainty as to whether he had fully recovered from the conditions as outlined in Judge Goodwin's decision?

A. I saw no evidence of *degenerative arthritis at Lisfranc's joint*. So, my opinion is he is fully recovered from that.

Q. And what's that based on?

A. That is based upon the physical examination I performed, but most importantly, the x-rays. The x-rays are a very objective diagnostic study which showed no evidence of degeneration.

Reproduced Record at 45a–46a (emphasis added) (R.R. ——).

Q. ... What is your opinion as to whether he's fully recovered from the *tarsal tunnel syndrome?*

\* \* \*

A. I would say that I cannot say that he's completely—that there's no evi-

dence of any nerve injury that might still exist.

R.R. 47a–48a (emphasis added).

Q. And finally, with respect to the *instability of the Lisfranc's joint,* do you believe he's fully recovered from that condition?

A. Yes. I never saw any of it. And, absolutely, if he ever exhibited, and I never saw it, he shows no evidence of it whatsoever.

R.R. 48a–49a (emphasis added).

After considering the evidence, WCJ Olin found that the physical findings of Dr. Schoenhaus as of November 26, 2003, and his conclusion that Claimant had fully recovered, were more persuasive and credible than the testimony of Dr. Greene. WCJ Opinion, 1/14/05, at 6–7. WCJ Olin also rejected as unpersuasive Claimant's subjective complaints of left foot discomfort. *Id.* at 7–8. WCJ Olin granted Employer's termination petition and Claimant appealed to the Board.

The Board reversed, noting that Dr. Schoenhaus' "testimony, in our view, is less than positive as to Claimant's complete recovery from his judicially established work injuries. In addition, it fails to address the finding that Claimant's instability in the tarsometatarsal joint [was] irreversible and permanent." Board Opinion, 9/27/05, at 7. The Board also found that Dr. Schoenhaus' report dated December 2, 2003, was equivocal because he concluded that if Claimant is experiencing any residual numbness it would interfere with his ability to perform his pre-injury job, but that such complaints by Claimant seem to be "suggestive in nature." *Id.* Employer's insurer, Inservco, now petitions this Court to review the Board's order.[1]

---

1. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence.

Inservco argues that the Board erred by concluding that Dr. Schoenhaus' testimony was incompetent. Inservco also contends that WCJ Olin was not bound by WCJ Goodwin's finding that Claimant's injuries were permanent in nature. We agree with Inservco's assertions and will reverse the Board's order. For purposes of our analysis, we shall address separately the two bases for the Board's decision: First, whether Dr. Schoenhaus' testimony, and opinion as to Claimant's full recovery, should have been barred by the doctrine of collateral estoppel; and, second, whether Dr. Schoenhaus' testimony and IME report were equivocal.

■■■ It is well-settled that an employer may not re-litigate, by way of a petition to terminate benefits, the original medical diagnosis underlying a WCJ's finding of a claimant's disability as of the date of the compensation award. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 330, 632 A.2d 1302, 1304 (1993). To do so would violate the doctrine of collateral estoppel, which "forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *Id.* (quoting *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989)). We have carefully reviewed Dr. Schoenhaus' testimony and find that it did not constitute an impermissible collateral attack on Claimant's judicially established work injuries.

■■■ Prior to eliciting Dr. Schoenhaus' opinions, Employer's counsel reminded him that WCJ Goodwin had found, as compensable injuries, "post traumatic tarsal tunnel syndrome, post traumatic degeneration and instability of the Lisfranc's or tarsal metatarsal joints." R.R. 44a. With those determinations in mind, Dr. Schoenhaus then opined that Claimant could return to his pre-injury employment without restrictions as of November 26, 2003, the date of the second IME. R.R. 45a. On cross-examination, Claimant's attorney questioned Dr. Schoenhaus regarding his first IME of Claimant in 2000, and whether Dr. Schoenhaus had reviewed his 2000 IME report before conducting the most recent IME. Dr. Schoenhaus responded:

No. As a matter of fact, I did not. I did this as a completely objective study again, an evaluation. I didn't look at my first report. It was in my records, but I didn't look at it to determine what my findings were then. This was a completely new look at [Claimant] to see what my opinions were at this time.

R.R. 71a. Later, on redirect, Dr. Schoenhaus again acknowledged that he had reviewed WCJ Goodwin's decision and expressly accepted her legal findings. R.R. 77a–78a. The WCJ credited Dr. Schoenhaus' testimony, and, thus, it is binding on this Court as well as the Board.[2] In light of Dr. Schoenhaus' credited testimony, we disagree with the Board's conclusion that Dr. Schoenhaus in any way disavowed Claimant's judicially established injuries.[3]

*To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1224 (Pa. Cmwlth.2003).

**2.** In its opinion, the Board rejected "Dr. Schoenhaus' assurances" that he performed a " 'fresh' and completely objective study." Board Opinion, 9/27/05, at 4. In doing so, the Board came perilously close to revisiting WCJ Olin's determination that Dr. Schoenhaus testified credibly on this important point. The

Board, as an appellate body, may not overturn credibility determinations made by the WCJ in his role as factfinder. *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29 (Pa.Cmwlth. 2002).

**3.** In reaching the opposite conclusion, the dissent places undue emphasis on isolated responses by Dr. Schoenhaus on cross-examination. It is apparent that this line of question-

It is eminently clear to this Court, as it was to WCJ Olin, that Dr. Schoenhaus "accepted the underlying WCJ findings of work trauma and based his opinions of Claimant's present condition thereon." WCJ Opinion, 1/14/05, at 6.

 The Board also suggested that Dr. Schoenhaus' testimony and IME report was equivocal. In addressing this issue, we are mindful that, in a termination proceeding, the burden of proof is on the employer to establish that the claimant has fully recovered from his work-related injury. *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087, 1091 (Pa.Cmwlth.2001). The employer meets this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Id.* (quoting *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997)).

 Whether expert testimony is equivocal is a question of law that is fully subject to this Court's review. *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29 (Pa.Cmwlth.2002). When making that determination, we must examine the entire testimony of a witness as a whole and not rely upon a fragment of testimony removed from its context. *Id.* at 28. A

medical expert's testimony is unequivocal if, after providing a foundation, he testifies that he believes or thinks the facts exist. *Id.* at 28–29.

Here, the Board focused on the excerpts from Dr. Schoenhaus' testimony quoted earlier in this opinion. Without any explanation, the Board concluded that this testimony was "less than positive as to Claimant's complete recovery from his judicially established work injuries. In addition, it fails to address the finding that Claimant's instability in the tarsometatarsal joint [was] irreversible and permanent." Board Opinion, 9/27/05, at 7. We disagree with both aspects of the Board's determination.

The Board erred, first, by basing its decision on fragments of Dr. Schoenhaus' testimony removed from their context. Presumably the Board was troubled by Dr. Schoenhaus' opinion as to whether Claimant was fully recovered from his tarsal tunnel syndrome; Dr. Schoenhaus responded to that question as follows:

> I would say that I cannot say that he's completely—that there's no evidence of any nerve injury that might still exist.

R.R. 47a–48a. This testimony, while admittedly not a model of clarity, is not equivocal. It records an individual changing his mind about how best to express a thought. Even assuming, as the Board seems to suggest, that Dr. Schoenhaus began to state that Claimant had not fully recovered, he corrected himself in mid-sentence and stated, definitively, that there was no evidence of an existing nerve

---

ing by Claimant's attorney was intended to elicit a statement by Dr. Schoenhaus that his 2000 IME revealed no evidence of tarsal tunnel syndrome. WCJ Olin carefully considered this portion of Dr. Schoenhaus' testimony but concluded that, based upon the doctor's *entire* testimony, his opinion as to full recovery was competent. This case illustrates why "[i]n a worker's compensation proceeding, answers

given in cross-examination do not, as a matter of law, destroy the effectiveness of previous opinions expressed by a physician. Rather, the evidence will be assessed as a whole in passing upon the weight to be given to the expressed opinion." *Hannigan v. Workmen's Compensation Appeal Board (Asplundh Tree Expert Co.)*, 151 Pa.Cmwlth.252, 616 A.2d 764, 767 (1992).

injury. We reject the Board's implication that a medical witness, or any witness, is not permitted to correct his testimony in order to clarify his statement.

More importantly, a review of Dr. Schoenhaus' *entire* testimony reveals that it was unequivocal, as found by the WCJ. Dr. Schoenhaus testified repeatedly, and convincingly, that Claimant was capable of returning to his pre-injury employment, without restrictions; no longer exhibited "any residual problems from his work-related injury;" and no longer required "any medical treatment." R.R. 49a. Dr. Schoenhaus' opinions were amply supported by his testimony regarding the objective findings from Claimant's 2003 IME. During that examination, Dr. Schoenhaus compared Claimant's right foot to his left foot, and found that there was no difference in range of motion. R.R. 32a. He measured the girth of Claimant's calves and saw no indication of atrophy in the left. R.R. 35a–36a. Dr. Schoenhaus detected no swelling in Claimant's left foot, which would have been expected if Claimant was currently suffering from the conditions he alleged. R.R. 33a.[4] Claimant exhibited no limp or other sign of weakness, such as difficulty walking or a tendency to favor one side over the other. R.R. 37a. X-rays taken by Dr. Schoenhaus "showed absolutely no sign of degenerative joint disease." R.R. 38a. In sum, Dr. Schoenhaus' testimony provided a solid foundation for his opinion that Claimant had fully recovered and that there were no objective medical findings to substantiate Claimant's subjective complaints of pain.

■■■ We reject the Board's conclusion that Dr. Schoenhaus, and WCJ Olin, were bound by WCJ Goodwin's finding that "[t]he instability in [Claimant's] tarso-metatarsal joint is not going to reverse and is permanent." WCJ Opinion, 9/28/01, at 3. As Inservco points out, the duration and extent of an injury are always at issue in proceedings under the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626. *Varghese v. Workmen's Compensation Appeal Board (City of Philadelphia, Department of Health),* 682 A.2d 443, 446 (Pa.Cmwlth.1996).[5] In any event, WCJ Goodwin's order did not establish that Claimant's injuries were permanently compensable. Rather, the order granted Claimant compensation benefits "as of October 30, 1999 and continuing *until further order or agreement.*" WCJ Opinion, 9/28/01, at 4 (emphasis added). The emphasized language shows that WCJ Goodwin anticipated the possibility of future litigation or negotiations between the parties regarding the compensability of Claimant's injuries.

Finally, the Board found equivocal the following highlighted statement in Dr. Schoenhaus' IME report:

As a result of the independent medical examination, the history of the patient,

---

4. Dr. Schoenhaus opined that Claimant's subjective complaints of pain in his left foot were attributable to malingering. For example, Claimant complained of numbness on the top of his foot, which Dr. Schoenhaus noted could not be a manifestation of a tarsal tunnel injury. R.R. 36a. Also, when Dr. Schoenhaus asked Claimant to move the toes on his left foot, he detected no contraction in Claimant's left leg muscles, which indicated that Claimant was not even attempting to comply. R.R. 34a–35a.

5. We also agree with Inservco's observation that unless there is an impairment rating evaluation, specific loss claim or alleged occupational disease, a WCJ cannot definitively establish the duration of an injury. If a WCJ could do so on a claim petition it would foreclose the possibility of an employer or its insurer ever filing a petition to modify, suspend or terminate benefits.

physical examination, gait analysis and x-ray evaluation it can be concluded that I see no evidence of any problems that would interfere with [Claimant's] ability to return to his original job responsibilities. If there are [sic] any residual numbness that may exist, which at this point appears to be *suggestive* in nature, it would certainly not interfere with his ability to perform his original functions.

Exhibit C–Schoenhaus–3 at 2 (emphasis added). The Board has placed undue emphasis on what is, in all likelihood, a typographical error. We agree with Inservco that Dr. Schoenhaus intended to write the word "subjective" rather than its near homonym "suggestive." Such a reading of the report comports with Dr. Schoenhaus' deposition testimony and the findings of WCJ Olin regarding Claimant's unsubstantiated "subjective" complaints of pain. In any event, even if we were to accept this single, isolated statement at face value, it could not possibly provide a basis for affirming the Board's decision given the overwhelming, credible evidence of Claimant's full recovery.

For the foregoing reasons, we reverse the order of the Board and reinstate the adjudication of the WCJ granting Employer's termination petition.

### ORDER

AND NOW this 13th day of June, 2006, the order of the Workers' Compensation Appeal Board dated September 27, 2005, in the above-captioned matter is REVERSED. The adjudication of Workers' Compensation Judge Scott Olin dated January 14, 2005, is REINSTATED.

McGINLEY, J., dissents and files opinion.

DISSENTING OPINION by Judge McGINLEY.

I respectfully dissent to the majority's conclusion that "Dr. Schoenhaus' testimony provided a solid foundation for his opinion that Claimant had fully recovered and that there were no objective medical findings to substantiate Claimant's subjective complaints of pain."

To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Compensation Appeal Board (J.C. Penney Co.)*, 747 A.2d 430 (Pa.Cmwlth.), *appeal denied*, 564 Pa. 718, 764 A.2d 1074 (2000). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from his/her work-related injuries. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth.253, 595 A.2d 697 (1991).

At the conclusion of the claim petition hearing, the original WCJ, Nancy Goodwin, found that "[b]ased upon Dr. [Ronald B.] Greene's examination and review of test results, his diagnosis is credible that as a result of the work injury, Claimant sustained a *post-traumatic tarsal tunnel syndrome and post-traumatic degeneration and instability of his Lisfranc's or tarsometatarsal joints.*" (emphasis added). WCJ Nancy Goodwin's Decision, September 28, 2001, Finding of Fact (F.F.) No. 9 at 3; R.R. at 10a.

Although Dr. Schoenhaus opined that Claimant fully recovered from his work-related injury as of the date of his November 26, 2003, examination, Dr. Schoenhaus refused to accept WCJ Nancy Goodwin's finding in the claim petition proceeding of the above-mentioned injuries. Specifically, Dr. Schoenhaus testified:

Q: ... So, my question to you is that you're disputing that Mr. Purefoey [Claimant] ever had a *post traumatic tarsal tunnel syndrome?* (emphasis added).

A: *That is correct.* (emphasis added).

Q: You're also disputing that Mr. Purefoey [Claimant] ever had *a post traumatic degeneration and instability of Lisfranc's or tarsal metatarsal joints?* (emphasis added).

A: He might have had some inflammation initially, but no evidence of degenerative joint disease. *That's correct, none.* (emphasis added).

Deposition of Dr. Harold D. Schoenhaus, March 19, 2004, at 55; R.R. at 69a.

In *GA & FC Wagman v. Workers' Compensation Appeal Board (Aucker),* 785 A.2d 1087 (Pa.Cmwlth.2001), this Court addressed a similar factual situation. In *GA & FC Wagman,* Joseph Aucker (Aucker) "began receiving benefits for an injury described as 'exacerbation of pseudoarthrosis L4–5' " pursuant to a notice of compensation payable (NCP). *Id.* at 1088. GA & FC Wagman, Inc. (employer) had petitioned to terminate benefits. Employer presented the testimony of Vernon R. Morris, Jr., M.D. (Dr. Morris). "As to [Aucker's] pseudoarthrosis, Dr. Morris determined that there is possible pseudoarthrosis at the L4–5 region as a result of the fusion procedure. He also testified that 'I agree there is a pseudoarthrosis that I think is of no consequence here.' " *Id.* at 1089, *quoting* N.T. 4/08/98, p. 57. Dr. Morris opined that Aucker had fully recovered from his work-related injuries. The workers' compensation judge found Dr. Morris credible and stated that this judge "does not believe Dr. Morris's opinion concerning what occurred on July 25, 1990, is really inconsistent with the general nature of the injury as described on the Notice of Compensation Payable so as to render his overall opinion that the Claimant's [Aucker's] problems are related to degenerative disc disease and not the July 25, 1990 work injury to be legally 'worthless'." *Id.* at 1090. The workers' compensation judge granted the termination petition and the board reversed.

On appeal, the query was whether a WCJ could terminate compensation benefits based upon the testimony of a medical expert who believed that the accepted injury acknowledged in the NCP had never occurred:

> These portions of the Act [Section 407 and Section 413(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 736 and § 731] ensure that, when an employer seeks to terminate a claimant's benefits, *neither party can relitigate the nature of the accepted injury at a subsequent proceeding without following the proper procedures, which is to file a Review Petition and seek to have the description of the injury changed ....* The WCJ may also 'in the course of the proceedings' determine that the NCP was incorrect.

> However, that procedure was not followed here.... Rather, the WCJ found that the opinion of Dr. Morris concerning what occurred on July 25, 1990 was not inconsistent 'with the general nature of the injury described in the Notice of Compensation Payable.' Rather, the NCP specifically describes the injury as 'exacerbation of pseudoarthrosis L4–5', not an exacerbation in the area of L4–5, and not a muscular sprain. *Exacerbation of pseudoarthrosis, or fibrous union, is the injury that the Employer has acknowledged through issuance of the NCP that Claimant [Aucker] suffers from and in order to terminate Claimant's benefits, it must submit medical evidence proving Claimant [Aucker] has recovered from that injury.* The medi-

cal evidence presented by Employer, however, is inconsistent with the NCP because Dr. Morris does not recognize that Claimant ever suffered from 'exacerbation of pseudoarthrosis' on July 25, 1990. Therefore, it is impossible for Dr. Morris to give an opinion that Claimant [Aucker] fully recovered from that injury.... *Dr. Morris failed to determine whether or not Claimant [Aucker] has recovered from the accepted injury.*[1] (citations omitted and emphasis added).

*GA & FC Wagman,* 785 A.2d at 1091–92.

In the present controversy WCJ Scott M. Olin found Dr. Schoenhaus medical testimony credible that "[u]pon concluding Mr. Purefoey [Claimant] '. . . shows no evidence . . .' of Lisfranc joint dysfunction, degenerative arthritis nor signs of '. . . any nerve injury . . . /tarsal tunnel syndrome,' or any '. . . residual problems from his work-related injury' (N.T., p. 35), Dr. Schoenhaus released Claimant to all work without restriction or need for further medical care (N.T., p. 31–35)." WCJ Scott M. Olin Decision, January 14, 2005, Finding of Fact No. 5 at 2.

Here, Employer never filed a Review Petition seeking to change the description of Claimant's injury as found by WCJ Nancy Goodwin. No matter how expertly the record is massaged, Dr. Schoenhaus did not recognize the accepted injuries of post-traumatic tarsal tunnel syndrome and post-traumatic degeneration; therefore, it was impossible for Dr. Schoenhaus to opine that Claimant fully recovered. *GA & FC Wagman.* Since, the medical evidence was not competent to support a termination of workers' compensation benefits, I would affirm the decision of the Board.

---

1. In *GA & FC Wagman,* this Court stated that it was of no moment that the nature of Aucker's injury was established in the NCP rather than in a finding of fact.