IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roosevelt Phillips,                          :
                    Petitioner              :
                                            :    No.  76 C.D. 2016
          v.                                :
                                            :    Submitted:  August 19, 2016
Workers' Compensation Appeal                :
Board (Miller and Roebuck, Inc.             :
and Owners Insurance Company),              :
                    Respondents             :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  March 20, 2017


          Roosevelt Phillips (Claimant) petitions for review of the December 21, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed a Workers' Compensation Judge's (WCJ's) decision granting Claimant's claim petition for the closed period from March 24, 2013, through July 24, 2013, terminating Claimant's benefits as of July 25, 2013, and dismissing Claimant's penalty petition.

          Claimant worked for Miller and Roebuck, Inc. (Employer) as truck driver since December 16, 2011.  Claimant regularly made deliveries throughout the United States.  Claimant sustained injuries in the course and scope of his employment on March 24, 2013, when the load shifted in his trailer, which caused his truck to flip onto its side.  Claimant's head and the left side of his body struck the inside of the cab and his right foot was caught between the gas pedal and brake.  Claimant

experienced immediate pain in his right foot, as well as his left shoulder, knee, and thigh. Claimant also experienced tightness in his neck. Claimant called 9-1-1 to report the accident but informed the operator that he was not sure if he needed medical attention. Around the same time, Claimant called his boss, John Roebuck, and informed him of the accident but made no mention of any physical injuries. Since the accident occurred not far from Roebuck's home, he immediately drove to the scene. (WCJ's Findings of Fact Nos. 5(b)-(d).) After arriving at the scene, Roebuck asked Claimant if he was okay and Claimant responded "yes, under the circumstances." (WCJ's Finding of Fact No. 5(d).) Shawn Miller, another of Claimant's bosses, directed Claimant to report to Med Express for a blood test and Claimant complied. *Id.*

Claimant informed staff at Med Express that he was hurting, but was advised that the staff could do nothing but the blood test. Later that day, Claimant called Roebuck and advised him that he was really hurting. The next day, Claimant sought treatment at Mon Valley Hospital. The hospital took x-rays, provided Claimant with a brace for his right ankle and pain medication, and advised him to follow-up with his family physician. However, Claimant did not have a family physician at that time. (WCJ's Findings of Fact Nos. 5(e)-(g).)

Four days after the accident, on March 28, 2013, Claimant met with Miller and Roebuck to discuss the accident and they advised him that he would not be fired for flipping the truck. Claimant made no mention of his hospital visit at that meeting. However, he did inform his bosses that he was in pain and did not have any money to go to a doctor. Five days later, on April 2, 2013, Employer terminated Claimant's employment. On April 26, 2013, Claimant filed a claim petition against Employer. Claimant also filed a penalty petition alleging that Employer violated the

2

Workers' Compensation Act (Act)[1] by failing to issue a notice of compensation payable within twenty-one days and by willfully refusing to provide for necessary medical treatment resulting from his work accident. Employer filed answers denying the allegations of Claimant's petitions. The matters were assigned to the WCJ, who conducted several hearings. (WCJ's Findings of Fact Nos. 1-2, 5(i).)

At these hearings, Claimant testified as to the facts described above. Claimant explained that he began experiencing a lot of pain on the night of the accident and that he texted Roebuck and asked what he should do but did not get a response. The next morning, Claimant stated that he sought treatment from the local hospital. Claimant noted that he asked both Miller and Roebuck for workers' compensation insurance information to cover his medical treatment, but they told him he had to pay for it himself. As of the date of the hearing, June 6, 2013, Claimant testified that he was treating with Dr. Michael Raczkowski, a chiropractor, for pain in his back, neck, shoulders, and hips. Claimant described his condition at the time as one of constant pain, with an inability to stand or sit for long periods of time. (Reproduced Record (R.R.) at 303a-20a.)

On cross-examination, Claimant denied any previous injuries to his back, neck, or shoulders. He acknowledged that he was not seeking treatment for his left knee because he no longer has pain there. Claimant noted that during his meeting with Miller and Roebuck on March 28, 2013, they discussed moving Claimant from his truck-driver position to a manufacturing position, but he did not bring up any issue with regard to a workers' compensation claim or his need for further medical treatment. Claimant also noted that he never received his last paycheck from Employer. Further, Claimant stated that Dr. Raczkowski had imposed restrictions on

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

his ability to work, such as no long-term driving and no lifting over twenty pounds, and that he had been looking but could not find any suitable work. (R.R. at 321a-44a.)

Claimant also presented the deposition testimony of Dr. Raczkowski, who first saw Claimant on May 1, 2013. Dr. Raczkowski testified that Claimant presented with pain in his neck and low back, which radiated into both arms and both legs. He noted that Claimant's complaints were consistent with radiological findings, which included disc herniations/protrusions, disc bulges, spinal stenosis, facet syndrome, and degenerative disc disease in the cervical, thoracic, and lumbar spine. He attributed Claimant's condition to the trauma Claimant sustained in the work accident. Dr. Raczkowski stated that he provided several different treatments to Claimant, including adjustments, vibration therapy, and manual traction, to attempt to decrease Claimant's pain. However, as of his February 5, 2014 deposition, Dr. Raczkowski indicated that Claimant still has a significant amount of pain and still requires treatment. (R.R. at 154a-67a.)

Dr. Raczkowski testified that an October 2013 MRI confirmed his diagnoses. As to any degenerative disc disease identified on this MRI, Dr. Raczkowski explained that the trauma from Claimant's work accident exacerbated Claimant's condition. Dr. Raczkowski stated that he released Claimant to return to work on October 3, 2013, with numerous restrictions, including limited standing and sitting, no lifting in excess of twenty pounds, and no lifting over his head. On cross-examination, Dr. Raczkowski admitted that he had not reviewed Claimant's hospital records for his emergency room visit the day after the accident. However, after reviewing the same, Dr. Raczkowski conceded that Claimant only reported pain in his right knee and ankle and left thigh, and nothing in his neck or back. Dr. Raczkowski

4

also acknowledged that Claimant's October 2013 MRI was normal for the thoracic and lumbar spine and not supportive of his continued complaints in those areas. (R.R. at 167a-90a.)

Additionally, Claimant presented the deposition testimony of Aaron Maddas, D.C., who first saw Claimant on February 17, 2014, at the referral of Dr. Raczkowski. Dr. Maddas testified that Claimant complained of pain in the cervical, thoracic, and lumbar areas of his spine. Dr. Maddas diagnosed Claimant as suffering from cervical radiculitis and herniated discs at the C5-C6 and C6-C7 levels. Dr. Maddas noted that Claimant's October 2013 MRI confirmed his diagnosis. He opined that Claimant's condition was caused by the March 24, 2013 work accident. He further opined that Claimant was subject to numerous restrictions which would prevent him from returning to his pre-injury job, including no prolonged activities, such as driving long distance; limited range of motion, including no overhead activity or repetitive bending; and limited weight-bearing activity. (R.R. at 56a-70a.)

On cross-examination, Dr. Maddas admitted that the records pertaining to the treatment that Claimant received at the local hospital emergency room describe Claimant's cervical and lumbar spine examination as normal, which is inconsistent with the description provided to him by Claimant at the initial examination. Dr. Maddas conceded that the October 2013 MRI report makes no mention of a disc herniation in Claimant's lumbar or cervical spine and no mention of any lumbar spinal stenosis. (R.R. at 70a-89a.)

Claimant next presented the deposition testimony of Justin J. Petrolla, M.D., who is board-certified in orthopedic surgery and saw Claimant on a single occasion on December 17, 2013. Dr. Petrolla testified that Claimant's October 2013 MRI revealed a significant disc protrusion and mild to moderate stenosis at C5-C6

and C6-C7, with accompanying cervical radiculopathy, which he described as consistent with Claimant's complaints. He opined that Claimant's condition was directly related to his work accident. On cross-examination, Dr. Petrolla acknowledged that he did not review Dr. Raczkowski's records and that the emergency room records did not reference any neck complaints, but instead referred to the neck examination as normal. Dr. Petrolla also acknowledged that Claimant's October 2013 MRI report was essentially normal with respect to the thoracic spine, and only mentioned degenerative changes and small osteophytes in relation to the cervical and lumbar spine. On re-direct examination, Dr. Petrolla testified that interpretation of an MRI could be subjective. He also stated that it would not be unusual for Claimant to first experience cervical pain several days after the accident. (R.R. at 100a-26a.)

Employer presented the testimony of Roebuck, a co-owner and vice president of the company. Roebuck described his business as a small trucking company and a manufacturing company that produces stone veneer. He confirmed that Claimant called him immediately after the accident and he was at the scene within approximately twenty minutes. Upon arriving at the scene, Roebuck asked Claimant if he was okay and if he needed medical attention, but Claimant responded that he was fine. Roebuck explained that Employer could not bring Claimant back as truck driver because of insurance costs and that Claimant was offered a position in Employer's manufacturing plant. Roebuck testified that he asked Claimant how he was doing at the March 28, 2013 meeting and Claimant again responded that he was fine. Roebuck stated that he and Miller then discussed the manufacturing job with

Claimant,[2] which Claimant wanted to start right away, but Roebuck advised him that he and Miller would talk and get back to him later. Roebuck denied that Claimant ever discussed filling out paperwork for an injury report or requested workers' compensation insurance information during that meeting. (R.R. at 253a-66a.)

Roebuck testified that Miller received a text from Claimant a few days later indicating that he could not accept the manufacturing job until he received the wages that he was owed prior to the accident. Roebuck stated that Claimant made no mention of an inability to perform the job due to physical injuries/restrictions. (R.R. at 266a-67a.) On cross-examination, Roebuck explained that he and Miller handle all human resources duties since it is a very small company, employing a maximum of eight people at certain times. Roebuck could not recall if Employer had a list of panel providers to which it would refer injured employees and noted that this was Employer's first workers' compensation case. Roebuck stated that he was unaware that Claimant went to the hospital for treatment. Roebuck later read a text message that Miller received from Claimant indicating that he would not return to a job in the shop until he received wages he was owed in the amount of $1,698.86 and payment for any medical expenses incurred since the accident. Roebuck later acknowledged that he never discussed with Claimant the wages he would receive for the manufacturing position and that he never sent Claimant a letter directing him to report to work at a specific date or time. (R.R. at 269a-94a.)

Employer also presented the deposition testimony of Marc J. Adelsheimer, M.D., who is board-certified in the specialty of physical medicine and rehabilitation, with a subspecialty in pain medicine. Dr. Adelsheimer reviewed

---

[2] Roebuck noted that the manufacturing job would require regular lifting of ninety-four pound bags of cement. (R.R. at 265a.)

Claimant's previous medical records and performed an independent medical examination of Claimant on July 25, 2013. He noted that the emergency room records merely diagnosed Claimant as suffering from a right ankle contusion and made no mention of any neck or low back pain. However, during the examination, Claimant informed Dr. Adelsheimer that he no longer had pain in his ankle or knees but did have pain in his neck, which would radiate down his left arm, and pain in his low back, which would radiate down his left leg. Claimant also mentioned numbness and tingling in those extremities. Dr. Adelsheimer described his examination of Claimant's neck and low back as normal. While Claimant revealed subjective complaints of pain during palpation of those areas, Dr. Adelsheimer stated that there were no muscle spasm or trigger points noted. In fact, Dr. Adelsheimer testified that his examination did not reveal any positive, objective findings. (R.R. at 217a-24a.)

Dr. Adelsheimer opined that Claimant suffered injuries to his left femur, right ankle, foot, and knee as a result of the March 24, 2013 work accident, all of which had fully resolved as of the date of his examination. He referred Claimant for an MRI, the one performed on October 1, 2013, for the sake of completeness, which he testified was normal as to the thoracic spine and only showed minor disc osteophytes in the cervical and lumbar spine. He described the osteophytes as resulting from degenerative disc disease and noted that they look completely different from a herniated disc on MRI films. Dr. Adelsheimer stated that the MRI did not suggest any traumatic injury and, hence, his original diagnoses remained intact. Following his examination, he completed a physician's affidavit of recovery. On cross-examination, Dr. Adelsheimer acknowledged that a person with degenerative disc changes can become symptomatic after a traumatic event, and that it was possible that Claimant's accident could be such an event. However, he reiterated his

8

opinion that Claimant's current condition was unrelated to the accident. (R.R. at 225a-34a.)

By decision and order circulated January 9, 2015, the WCJ granted Claimant's claim petition for the closed period from March 24, 2013, through July 24, 2013, terminated Claimant's benefits effective July 25, 2013, and dismissed Claimant's penalty petition. The WCJ credited each medical witness to the extent that their respective testimonies supported a finding that Claimant sustained disabling injuries to his left femur, right ankle, right foot, right knee, and a cervical and lumbar strain with some radicular symptoms. However, the WCJ specifically credited Dr. Adelsheimer's testimony that Claimant had fully recovered from all of these injuries as of July 25, 2013, and rejected any testimony to the contrary. In this regard, the WCJ credited Dr. Adelsheimer's testimony that the October 2013 MRI revealed degenerative changes in Claimant's cervical and lumbar spine, but no traumatic injury or herniated discs. With respect to the penalty petition, the WCJ concluded that "[w]hile it is clear that the claimant gave proper notice of the occurrence of the work incident and later that he needed medical treatment, the record is unclear as to whether or not the claimant ever informed his employer that he was disabled from work . . . ." (WCJ's Conclusion of Law No. 3.) Claimant appealed to the Board, but the Board affirmed.

On appeal to this Court,[3] Claimant first argues that the Board erred in affirming the WCJ's decision granting his claim petition for a closed period and

---

[3] On appeal, our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704, *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 261 n.3 (Pa. Cmwlth. 2006).

9

terminating his benefits as of July 25, 2013, because Dr. Adelsheimer's testimony was equivocal and failed to address or offer an opinion of full recovery as to his work-related radiculopathy. We disagree.

The law is well settled that in a workers' compensation proceeding, the WCJ has complete authority over questions of credibility and evidentiary weight, and can accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997), *appeal denied*, 718 A.2d 787 (Pa. 1998). Moreover, neither the Board nor this Court will not disturb the WCJ's findings if they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995).

As we stated in *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197 (Pa. Cmwlth. 2006), "[c]ompetency, when applied to medical evidence, is merely a question of whether a witness's opinion is sufficiently definite and unequivocal to render it admissible . . . A medical expert's opinion is not rendered incompetent unless it is based solely on inaccurate information." *Id.* at 1203. Similarly, if a medical expert's testimony is based only upon possibilities, then that testimony is equivocal and not legally competent to support a WCJ's finding.[4] *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994), *appeal denied*, 659 A.2d

---

[4] Whether expert testimony is equivocal is a question of law that is fully subject to this Court's review. *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29 (Pa. Cmwlth. 2002). When examining this question, we review the testimony as a whole and do not base our analysis on a few words taken out of context. *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35, 56 (Pa. Cmwlth. 2016).

990 (Pa. 1995). To the contrary, a medical expert's testimony is unequivocal if, after providing a foundation, the medical expert testifies that he believes or thinks the facts exist. *Inservco Insurance Services v. Workers' Compensation Appeal Board (Purefoey)*, 902 A.2d 574, 579 (Pa. Cmwlth. 2006), *appeal denied*, 917 A.2d 316 (Pa. 2007).

In the present case, Claimant argues that the testimony of Dr. Adelsheimer was equivocal and incompetent because he failed to acknowledge or address a work injury in the nature of radiculopathy, as found by the WCJ, and failed to offer any opinion of full recovery from that injury. Claimant cites to the WCJ's Finding of Fact No. 11, wherein the WCJ states that "I find as a fact that the claimant suffered a left femur, right ankle, right foot, right knee strain and also a cervical and lumbar strain **with some radicular symptoms** at the time of the work injury on March 24, 2013. . . ." (R.R. at 20a) (emphasis added). However, as the Board noted, the WCJ did not specifically accept or include the diagnosis of radiculopathy as part of Claimant's work injury, he only noted that Claimant suffered from some radicular symptoms.

Indeed, this is consistent with a report from Dr. Adelsheimer dated July 25, 2013, wherein he noted that Claimant "continued to have some subjective complaints of pain in his neck and lower back with some radicular symptoms. No true radiculopathy was noted on my examination today." (R.R. at 246a). When asked about this statement during his deposition testimony, Dr. Adelsheimer explained that his examination revealed no reflex loss, dermotal sensory loss, or motor loss, all of which would have been "true neurologic objective findings that would indicate radiculopathy." (R.R. at 226a.) Further, during his deposition, Dr. Adelsheimer credibly testified that a subsequent MRI did not alter his diagnoses or

11

change his opinion that Claimant had fully recovered from his work-related injuries. *See* R.R. at 227a-28a. Hence, we agree with the Board that the credible testimony of Dr. Adelsheimer constitutes substantial, competent evidence in support of the WCJ's findings.

Next, Claimant argues that the Board erred in affirming the WCJ's decision dismissing his penalty petition when Employer simply ignored a known injury and disability. Again, we disagree.

Section 435(d) of the Workers' Compensation Act (Act)[5] provides for an award of penalties for violations of the Act or its rules or regulations. The burden is on the claimant to establish that such a violation appears on the record. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000), *appeal denied*, 781 A.2d 151 (Pa. 2001). However, even if a violation is apparent on the record, an award of penalties is not always required; rather, the decision to impose penalties as well as the amount of penalties is within the sole discretion of the WCJ. *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221, 228 (Pa. Cmwlth. 2008). Hence, a WCJ's decision regarding penalties will not be disturbed on appeal absent an abuse of discretion. *Id.*

Section 406.1(a) of the Act addresses an employer's duties upon receiving notice of a work injury and provides, in pertinent part, as follows:

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in

---

[5] Added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §991(d).

12

> section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's **disability**.

77 P.S. §717.1(a) (emphasis added).[6] Similarly, we have held that if an employer believes a claim was not compensable, it is required to issue a notice of compensation denial within 21 days. *Orenich v. Workers' Compensation Appeal Board (Geisinger Wyoming Valley Medical Center)*, 863 A.2d 165, 169 (Pa. Cmwlth. 2004), *appeal denied*, 880 A.2d 1242 (Pa. 2005).

In the present case, there is no question that Employer did not issue a notice of compensation payable or a notice of compensation denial within 21 days. Nevertheless, the WCJ exercised his discretion in deciding not to award a penalty. The WCJ explained that while Claimant gave proper notice of the occurrence of the work incident and later that he needed medical treatment, the record was unclear as to whether or not Claimant ever informed Employer that he was disabled from work. The Board could not conclude that the WCJ abused his discretion, citing the limited nature of Claimant's claim, i.e., an accident occurring on March 24, 2013, and a termination of benefits effective July 25, 2013, as well as the dispute regarding the extent of Claimant's work injuries. We agree with the Board.

Claimant asserts that Employer's violation, coupled with its termination of Claimant purportedly after Employer learned that Claimant was complaining of injuries and a lack of medical treatment, "shock the conscience." (Claimant's brief at 23.) However, Claimant's assertion mischaracterizes the record in this case. Roebuck, Employer's co-owner and vice president, credibly testified that Claimant

---

[6] Added by the Act of February 8, 1972, P.L. 25.

13

called him immediately after the accident, that he was at the scene within approximately twenty minutes, and that he asked Claimant if he was okay or needed medical attention and Claimant responded that he was fine. Roebuck also testified that only four days after the accident, he and Miller, Employer's other co-owner, met with Claimant to discuss offering him a position in Employer's manufacturing plant. At this meeting, Roebuck asked Claimant how he was doing and Claimant again responded that he was fine.

Roebuck noted that Claimant had asked about starting this new job right away and specifically denied that Claimant ever discussed filling out paperwork for an injury report or requested workers' compensation insurance information. A few days later, Roebuck testified that Miller received a text from Claimant indicating that he could not accept the manufacturing job until he received the wages that he was owed prior to the accident,[7] and Claimant made no mention of an inability to perform this job due to his injuries/restrictions. Further, while Roebuck indicated that it could not offer Claimant a return to his truck driver position due to increased insurance costs, he specifically denied ever terminating Claimant's employment.

Upon review of the record herein, we likewise cannot conclude that the WCJ abused his discretion in not awarding Claimant any penalties.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Roebuck stated that Claimant wanted to be compensated for the entire trip to Denver, Colorado, that he would have made but for the accident, which occurred not far from Employer's facility. *See* R.R. at 267a.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roosevelt Phillips, : 
               Petitioner : 
  :   No. 76 C.D. 2016
         v. : 
  : 
Workers' Compensation Appeal : 
Board (Miller and Roebuck, Inc. : 
and Owners Insurance Company), : 
             Respondents : 

## ***ORDER***

AND NOW, this 20th day of March, 2017, the order of the Workers' Compensation Appeal Board, dated December 21, 2015, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge