Alice Lamoreaux, Widow, Harold Lamoreaux, Deceased, Petitioner *v.* Workmen's Compensation Appeal Board (Celotex Corporation and Standard Fire Insurance Company), Respondents.

Submitted on briefs December 12, 1984, to Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*Sandor Yelen*, for petitioner.

*David W. Saba, Hourigan, Kluger, Spohrer & Quinn*, for respondents, Celotex Corporation and Standard Fire Insurance Company.

OPINION BY JUDGE DOYLE, September 16, 1985:

Alice Lamoreaux (Appellant), the widow of Harold Lamoreaux (Decedent), appeals from an order of the Workmen's Compensation Appeal Board (Board) which denied her claim for death benefits filed on behalf of her husband under Section 301(c)(1) of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1).

Decedent was employed by Celotex Corporation (Employer) as an oven operator for approximately seven years. The temperature in which he worked averaged between 90 and 110 degrees, and his job required that about every four minutes he move a car loaded with baked tile and weighing about 1500 pounds

(unloaded) along a track to a fellow employee. On the morning of April 9, 1979, Decedent collapsed and died shortly after beginning work. Relying primarily on the deposition testimony of Employer's medical witness, Dr. Goldstein, the referee found that Decedent had died from an acute myocardial infarction (or heart attack) which was not related to his employment and made a crucial finding that Decedent had pre-existing coronary heart disease. Appellant's medical witness, Dr. Klem, presented conflicting testimony to the effect that, in his opinion, Decedent's heart attack was directly related to the severity of his working conditions. Neither Dr. Klem nor Dr. Goldstein examined Decedent prior to his death, nor was an autopsy performed.

In order for a heart attack to be considered a compensable injury under the Act, a claimant must show a causal connection between his work and the attack. *Haney v. Workmen's Compensation Appeal Board,* 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1982). When this causal connection is not obvious it must be established by unequivocal medical testimony. *Id.* And where, as here, a claimant has failed to sustain his burden of proof before the referee and the Board, our scope of review is limited to ascertaining whether constitutional rights were violated, an error of law was committed, or competent evidence was capriciously disregarded. *Killian v. Workmen's Compensation Appeal Board,* 62 Pa. Commonwealth Ct. 29, 434 A.2d 906 (1981).

Appellant argues that the testimony of Employer's medical witness was incompetent because it was based upon inaccurate facts not of record. Specifically, she contends that there is no evidence to support Dr. Goldstein's theory that Decedent was suffering from pre-existing coronary artery disease, and, therefore, the

doctor's testimony that Decedent's heart attack was the result of the natural progression of such a disease, and only coincidentally occurred on the Employer's premises, could not have been based upon a reasonable degree of medical certainty. We agree.

In response to the hypothetical question asked by Employer's counsel, Dr. Goldstein answered:

Well, I have to *postulate* that Mr. Lamoreaux was suffering with pre-existing coronary artery disease, *presumably* in an asymtomatic state—this, of course, is common phenomena—and that, by its natural progression over the years one of its relatively frequent complications ensued—that of sudden death. And that is my reason[ed] opinion as to what transpired in this particular situation. (Emphasis added.)

Counsel for the Claimant moved to strike this response from the record because the hypothetical did not include facts of record. We must agree that such facts were not of record and that Dr. Goldstein, by his own subsequent testimony, established that they were gleaned neither from medical records nor a medical history, but only from the fact of the Claimant's massive heart attack itself. It is well settled that hypothetical questions must be based on matters which appear of record and on facts which are warranted by the evidence. *Borough of Morrisville v. Workmen's Compensation Appeal Board,* 54 Pa. Commonwealth Ct. 41, 419 A.2d 813 (1980). Indeed, both the referee and the Board made an explicit finding of fact that there was no record of Decedent having prior ill health. While we recognize that the absence of a prior *history* of heart disease is not necessarily inconsistent with the *fact* of the disease, since Dr. Goldstein testified that 25-30 percent or more of people who have heart disease do not know they have it, we must

also consider his testimony that it would be possible, under certain unusual conditions and circumstances, for stress alone to precipitate a heart attack death, and his further acknowledgment that stress could be a factor in a heart attack case even assuming Decedent had pre-existing heart disease. Simply stated, Dr. Goldstein assumed facts that were not in the record and therefore the competency of his testimony is fatally flawed. Whether or not medical evidence is equivocal or unequivocal requires a determination of its competency, not its credibility, and our duty is to review the record to determine whether the medical evidence was unequivocal and the referee's reliance on it proper or improper. *Roeberg Enterprise, Inc. v. Workmen's Compensation Appeal Board*, 42 Pa. Commonwealth Ct. 308, 400 A.2d 911 (1979). Contrary to the Board's opinion that the real issue is which doctor is to be believed and the referee's finding that Dr. Goldstein's testimony was the *more* credible,[1] the real issue is whether the doctor's testimony was competent, an issue of law that we now determine adversely to the Employer.

Section 301(c)(1) of the Act defines the term "injury" as "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto," and further specifies that the term " 'injury arising in the course of his employment,' . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer. . . ."

---

[1] The referee did not reject the testimony of Dr. Klem, or find that his testimony was not credible. In his discussion the referee stated specifically, "In view of all the circumstances pertaining to the decedent's employment and the manner of his death, your referee *prefers* the testimony of Defendant's medical witness."

In the case *sub judice,* there can be no doubt that Decedent's injury arose in the course of his employment, because of Section 301(c)(1)'s definition of that term. To be compensable, however, the injury must additionally meet the second requirement, *i.e.,* the injury (heart attack) must be related to the employment. But this requisite causal connection does not have to be absolute in medical terms, that is, the employment does not have to *medically cause* the death, but need only be related thereto, with the explicit legislative acknowledgment that the causal relationship may occur "regardless of his previous physical condition." *See Workmen's Compensation Appeal Board v. G. M. & W. Coal Co.,* 29 Pa. Commonwealth Ct. 138, 370 A.2d 386 (1977).

The question then was not whether Decedent did or did not have a pre-existing heart condition, but rather, whether the requisite causal connection existed between his injury and his employment, *without regard to his previous physical condition.* Keeping this in mind, we conclude that the medical testimony of Dr. Klem was unequivocal on the issue of causation. He stated, in part: "Based on reasonable medical certainty, it is my professional opinion that this man had an acute myocardial infarction, precipitated by the severity of his working conditions."

For these reasons we reverse the decision of the Board.

ORDER

Now, September 16, 1985, the Order of the Workmen's Compensation Appeal Board, No. A-82619, dated January 13, 1983, is hereby reversed.

Judge WILLIAMS, JR., did not participate in the decision in this case.