530 A.2d 538

William P. Laughlin and Fireman's Fund Insurance Co., Petitioners *v.* Workmen's Compensation Appeal Board (Huska), Respondents.

Submitted on briefs October 10, 1986 to Judges CRAIG and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Mark Gordon,* with him, *Daniel D. Harshman, Meyer, Darragh, Buckler, Bebeneck & Eck,* for petitioners.

*John A. Clay,* for respondent.

OPINION BY JUDGE BLATT, September 2, 1987:

This is an appeal by William P. Laughlin (employer) and his insurance carrier from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision to award benefits to Helen Huska (claimant) for the period from February 25, 1983 through September 18, 1983, to grant a suspension of those benefits commencing September 19, 1983, and to deny the claimant's request for reinstatement and modification. There is no cross appeal.

The referee found that the claimant, an office secretary, fell at work on November 4, 1982. She subsequently experienced severe low back pain which radiated down her right leg, and she was later diagnosed as having a herniated disc. The referee also found that the various medical histories in evidence contained conflicting testimony as to the date of the claimant's injury. The fact of a fall, however, is not disputed nor is it disputed that this fall occurred in the presence of the claimant's employer. Additionally, the claimant testified that, while she experienced *no* immediate pain upon falling, she did hear a "pop" or "snap", and that, about two or three weeks later, she first experienced pain in her abdomen, right buttock, thigh and leg.

The claimant's doctor, John G. Phillips, M.D., testified in direct evidence that, based upon the injury the claimant described as to "the twist, the pop, the radiation of pain", he concluded that her condition was due to her fall. On cross-examination, he was asked, in summary, if his opinion would be different if it were shown that the claimant had complained of pain prior to her

fall. His answer was "well, possibly." Evidence was thereafter introduced to the effect that, approximately two months before her fall at work, the claimant had seen a doctor regarding a complaint of similar pain. Additionally, he was advised that the claimant, beginning in September, had been sitting under an air conditioning register at work and that, from that point on, she "just didn't feel too good." When asked if these facts would cause him to alter his opinion as to the etiology of the claimant's pain, Dr. Phillips replied, "not really, because it is a very vague symptom and lots of people have back pain when they sit under an air conditioner." He further explained that the claimant's post-November complaint of leg pain is the type of symptom usually associated with a disc problem. He also testified that an interlude between a fall and pain does not necessarily make a physician less certain that the symptoms are related to the fall. Counsel for the employer concluded his cross-examination with the following, unobjected-to, hypothetical question:

> [T]hat she is not really sure when she had this episode at work, but she felt the pop, but doesn't know where the pop was, but she didn't have pain for two to three, or maybe even four weeks after whatever the injury or episode at work was. I want you to also assume that the records will show she had symptoms in September. Now, Doctor, are you able to now state with [sic] reasonable degree on [sic] medical certainty that she sustained a ruptured disc on November 4?

Dr. Phillips responded to this hypothetical question as follows: "If the history that I take to base my opinion on is this history, no." The referee made a specific finding based upon this hypothetical, which reads as follows:

> That in reviewing the record as a whole, it is obvious that the aforementioned hypothetical

question posed to Dr. Phillips by defendant's counsel contains excerpts from said record which are most advantageous to the defendant. The record clearly indicates that the claimant only fell on one occasion and that it was established that said fall occurred at work on November 4, 1982. The record further reveals that there was no comparison in the symptoms that the claimant experienced in September, 1982 as compared to those experienced two weeks subsequent to the fall on November 4, 1982 and that prior to the fall on November 4, 1982 the claimant was asymptomatic.

Accordingly, Your Referee gives little credence to the hypothetical question and answer alluded to in Finding No. 30 above.

The employer's appeal to this Court centers in large part upon this hypothetical question. The employer argues first that the Board misconstrued the crux of its appeal which it alleges went to the competency, not the credibility of the evidence. The Board, in affirming the referee, wrote: "the Defendant on appeal argues that the answer of Dr. John G. Phillips, Claimant's expert, to a hypothetical question renders his testimony equivocal. The Referee clearly rejected this part of the doctor's testimony." ([c]iting *Copperweld Corp. v. Workmen's Compensation Appeal Board (Smith)*, 73 Pa. Commonwealth Ct. 478, 458 A.2d 651 (1983)). The employer argues that in his response to the hypothetical question, Dr. Phillips recanted his testimony, thus rendering it equivocal under *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983). The employer argues further that the Board incorrectly interpreted the referee's adjudication as having rejected portions of Dr. Phillips' testimony when, in

fact, what the referee did was to reject the employer's unobjected-to hypothetical question. Further, the employer contends that, in order for the referee to reject the doctor's testimony in response to the hypothetical question, the referee would also need to reject the claimant's testimony.

We believe, however, that these contentions are without merit. First, the referee did not *reject* the hypothetical question but gave it "little credence." Additionally, while it clearly slanted the facts toward the employer's position, this was permissible because those facts *were* in evidence. But, if the referee chose to reject the underlying facts presented by the employer, then, *a fortiori,* he would give little weight to the hypothetical question based upon those facts. There is testimony that the claimant sustained her injury on November 4, 1982 and that she experienced pain a few weeks later. The doctor clearly testified that these were the facts he assumed to be true when he determined the causation for the claimant's pain. Further, his answer to the hypothetical question clearly indicated that that answer would apply only to the history as described by the employer's counsel. Inasmuch as the claimant testified at the hearing to facts similar to those upon which the doctor relied, the referee acted consistently in "matching" the claimant's testimony with her doctor's testimony, the latter being based upon the same facts as stated to the doctor when he first took the claimant's history. As the fact-finder, resolving disputes in the testimony was clearly within the referee's province. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

On the other hand, we do agree with the employer that the question of whether or not the doctor's testimony was equivocal is one involving an examination of the competency of the evidence. *Lamoreaux v. Workmen's*

*Compensation Appeal Board (Celotex Corp.),* 92 Pa. Commonwealth Ct. 1, 497 A.2d 1388 (1985). We believe, however, that the doctor's response to the hypothetical question based upon the employer's version of the facts, did not recant his prior opinion based upon the claimant's testimony. Accordingly, we must hold that the doctor's evidence was competent as a matter of law.

The employer's other contention is that because the claimant's counsel did not object to the hypothetical question, the referee cannot discount it. As previously noted, however, this is not a case where the hypothetical question was technically improper. The facts here *are* based upon evidence which was presented. Certainly, we are not aware of any rule of evidence making it proper to object to a hypothetical question on the basis that it is slanted to emphasize one party's position.

The employer further asserts that the referee cannot find a hypothetical question "improper" merely because it contains facts more favorable to one party. We agree. The referee, however, did not find the question improper but merely assigned it "little credence". He did so because it was not in accordance with the version of the underlying facts which he chose to accept. Thus, his position with regard to the factual findings is consistent.

In short, the referee here merely performed his role as the fact-finder and assigned less weight to the employer's version of the events than to the claimant's version. This being the case, we find no Board error and, accordingly, must affirm the Board's order.

ORDER

AND NOW, this 2nd day of September, 1987, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.