563 A.2d 232

**Ann G. YANTOS, Widow of George J. Yantos, Deceased, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (VULCAN MOLD & IRON COMPANY, DIVISION OF VULCAN, INC.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 21, 1989.

Decided Aug. 18, 1989.

232

Leslie J. Mlakar, Loughran, Mlakar & Bilik, Greensburg, for petitioner.

John B. Bechtol, and Thomas H. May, Pittsburgh, for respondents.

Before CRUMLISH, Jr., President Judge, and COLINS, J., and NARICK, Senior Judge.

COLINS, Judge.

Ann G. Yantos (claimant), widow of George J. Yantos (decedent), appeals an order of the Workmen's Compensa-

tion Appeal Board (Board) which affirmed the referee's decision dismissing her fatal claim petition. We affirm.

The decedent was employed by Vulcan Mold & Iron Company (employer) for over twenty (20) years. The employer is in the business of manufacturing iron molds for shipment to its customers. At the time of his death, the decedent was employed as a second pitman, which involved preparing a flask for the receipt of molten metal. Decedent was responsible for placing a core in the center of the flask so that molten ore would be poured around the core in the flask.

The decedent died on December 31, 1979. On that day, he worked from 7:00 a.m. until 1:00 p.m.[1] He returned to his home at 3:00 p.m. and complained of chest pains and shortness of breath. At approximately 6:30 p.m., he was taken by ambulance to Latrobe Hospital where he died at 7:00 p.m. Claimant filed a fatal claim petition on January 4, 1983, alleging that the decedent died as a result of a heart attack precipitated by the stress entailed by the heavy labor of his employment.

Following a hearing and a tour of decedent's work place,[2] the referee decided that claimant was not entitled to fatal claim benefits since the decedent did not die as a result of a work injury as required by Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

The referee found:

SEVENTH: As the second pitman, decedent's duty involved the placement of the core and he was required to place it exactly in the center of the flask....

EIGHTH: The core itself is carried by an overhead crane to the area where the flask is located and is lowered into the flask. It was the duty of the second pitman to guide

1. The work shifts were shortened on this date due to the holiday season.

2. This tour was conducted at claimant's request to enable the referee to better understand decedent's duties as a second pitman.

the lowering of the core into the flask and to see to it that the core was located in the exact center.

NINTH: As the core is lowered into the flask the second pitman would center it by using his hands or a four foot piece of oak or a hydraulic jack depending on the weight of the core. Once the core is centered the second pitman then places a bar on the core to hold it in place when the metal is pored [sic]. The bar itself was not very heavy and a worker can carry several of them at one time.

TENTH: After the core is centered, the molten metal is then carried to the site by an overhead crane and poured into the flask. After the pour the second pitman is then required to use a ten pound metal tool to skim off the slag or loose sand from the top. When he does this he must wear protective asbestos clothing and a safety shield. When the skimming is done the work of the second pitman is completed and he must wait for the next flask to be poured.

. . . . .

FIFTEENTH: Decedent did suffer from pre-existing coronary artery disease and he suffered a myocardial infarction in 1962. He has been under the care of Dr. Richard H. Horn. Decedent also suffered from hypertension and was obese. He has a family history of coronary artery disease and diabetes mellitus.

SIXTEENTH: Claimant's medical proof consisted of the deposition testimony of Dr. Richard H. Horn. Dr. Horn opined that decedent's death was a result of his work activity on December 31, 1979. In forming that opinion Dr. Horn relied on a hypothetic [sic] question posed by counsel. Dr. Horn in relying on the hypothetical posed opined that the work was strenuous and caused the heart attack. Dr. Horn testified that strenuous physical activity was required before he could link decedent's job with his death.

SEVENTEENTH: Dr. Larry E. Hurwitz testified by deposition for the defendant. He responded to the hypothetical question posed by counsel and could not state within

reasonable medical certainty that the work caused the heart attack.

EIGHTEENTH: This Referee does not accept the medical opinion expressed by Dr. Horn because the hypothetical question posed to him overstated the exertional requirements of the second pitman. Decedent never did move heavy iron molds which weighed several tons and he was not required to use considerable strength in his back muscles to cast the mold. He merely centered the core which dangled from the crane as stated and he skimmed the casted mold. In the opinion of this Referee, decedent did not have a heavy demanding job....

The Board affirmed the referee's decision finding that the claimant failed to meet her burden of proof in establishing that the decedent's heart attack was causally connected to his work.

■ In a workmen's compensation case, review by this Court is limited to a determination of whether constitutional rights were violated, an error of law was committed, or findings of fact were unsupported by substantial evidence. *Nesman v. Workmen's Compensation Appeal Board (Welded Construction Co.),* 121 Pa.Cmwlth. 90, 550 A.2d 583 (1988).

Claimant maintains that the referee erred in concluding that the hypothetical question posed by her attorney to Dr. Horn was overstated since employer did not object to the question. Accordingly, it is argued that since the propriety of the question was not objected to at the time the question was posed, a subsequent attack on the question's propriety is precluded. The hypothetical question inquired:

Q: [A]ssuming that the decedent, George Yantos, ... [whose] work consists of working in a hot dusty pit ... and assuming that on the date of his death that the decedent was a member of a pit crew that made iron molds, and assuming that from casting the molds considerable strength in the back muscles are used, and further assuming, Doctor, that the decedent's job was to work—

both work in and out of a hot pit moving heavy iron molds by hand with the use of his back muscles, and he is holding a six foot long instrument that he uses, and assuming that the molds weighed from one and a half to two tons, and further assuming, Doctor, that the pit man while moving this mold had to wear an asbestos silver coat, asbestos shoes and face shield as specified to protect him from the heat, assuming that the pit man worked in the smokey area of the pit, and assuming that ... the mold in the core that the decedent was working with on that date weighed between four and a half to twenty ton, and that the decedent worked and pulled about four and a half to twenty—pulled four of these cores in and out, and assuming that on that day of his death the decedent pulled this core with a bar that was about six feet long and the bar itself weighed approximately eighty to two hundred pounds and that he worked strenuously during this heat and dust, and assuming that he worked a six-hour shift that day.... [A]ssuming all of those facts, Doctor, ... could you give me your professional opinion with a reasonable degree of medical certainty as to the cause of Mr. Yantos' death ...?

The problem, however, with claimant's argument is that employer is not currently, nor did it ever seek to attack, the propriety of the hypothetical question. Rather, it was the referee who found that the question overstated the exertional requirements of the second pitman.

It is a basic tenet of expert testimony that, while an expert witness may base an opinion on facts of which he has no personal knowledge, those facts upon which the opinion is based must be supported by evidence in the record. *Lamoreaux v. Workmen's Compensation Appeal Board (Celotex Corp.)*, 92 Pa.Cmwlth. 1, 497 A.2d 1388 (1985); Packel & Poulin, Pennsylvania Evidence, § 703 at 516 (1987). Our review of the record discloses that, while employer did not object to the hypothetical question, employer did attack the assumptions made in the hypothetical

on cross-examination of claimant's expert.[3] In addition, the testimony of Melvin Haines, employer's melting foreman, refuted the assumed facts of the hypothetical concerning the physical exertion required of a second pitman. Thus, while employer did not object to the hypothetical question posed to claimant's medical expert at the time it was asked, we believe that it was within the referee's power as fact finder to reject the underlying premises upon which claimant's expert based his opinion. If this were not the case, a referee would be bound to accept as true assertions made within hypothetical questions no matter how absurd or outrageous. We, therefore, find no error in the referee's finding that the hypothetical posed to claimant's expert was overstated.

 Claimant also contends that the referee erred by imposing his opinion of the exertional requirements of a second pitman based upon his tour of the work place and, thereby, disregarded the testimony of claimant's witnesses. In a workmen's compensation case in which the Board takes no additional evidence, the ultimate fact finder is the referee and his findings of fact, if supported by substantial evidence must be accepted as true. *Carrier Coal Enterprises v. Workmen's Compensation Appeal Board (Balla),* 118 Pa.Cmwlth. 201, 544 A.2d 1111 (1988). Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Wittco Fashions v. Workmen's Compensation Appeal Board*

---

**3.** For example, employer's attorney asked:
 Q: [I] believe the hypothetical includes or assumes is a better word that Mr. Yantos was moving a four and a half to twenty ton iron mold using an eighty to two hundred pound bar, do you have any idea, Doctor, whether in your mind someone is physically capable of doing, anyone physically capable [sic] whether it be Mr. Yantos or anyone else, I am not really very familiar with the details of what mechanism he was using to move, I assume there was leverage, I assume there was someway to move a two ton core that was within the capabilities of a human being. I believe we were talking about four and a half tons, which would be approximately 9,000 pounds and twenty tons which would be approximately, my math escapes me, 40,000 pounds.
 A: Don't ask me how they do it but apparently it's hard.

*(O'Neil)*, 118 Pa.Cmwlth. 126, 544 A.2d 559 (1988). There is substantial evidence to support the referee's findings concerning the exertional requirements of a second pitman contained in the testimony of melting foreman, Melvin Haines. Accordingly, we refuse to hold that the referee imposed his own opinion of the type of work performed by decedent.

Next, claimant argues that the referee erred in disregarding the unequivocal medical testimony of decedent's physician and giving greater weight to the testimony of employer's medical expert. However, when the referee is presented with conflicting medical evidence, he may accept the testimony of one medical witness over that of another. *Nesman.* The referee may also, as the final arbiter of credibility, accept or reject the testimony of any witness in whole or in part and if the evidence so accepted is supported by substantial evidence, this Court is precluded from disturbing the referee's findings, even in the presence of evidence to the contrary. *Oakes v. Workmen's Compensation Appeal Board*, 66 Pa.Cmwlth. 569, 445 A.2d 838 (1982).

In the instant matter, the referee chose to believe the testimony of employer's medical expert over the testimony of claimant's medical expert. The record contains substantial evidence to support the referee's findings and, therefore, we refuse to disturb these findings on appeal.

Finally, it is submitted that the referee erred in failing to find that decedent's heart attack was causally connected to his work. In order for a heart attack to be compensable under the Act, the claimant must establish that the decedent's injury (heart attack) arose in the course of his employment and that it was related to his employment. *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch)*, 97 Pa.Cmwlth. 346, 509 A.2d 942 (1986). In the case at hand, both parties presented medical evidence concerning the causal connection between the decedent's employment and his heart attack. Clearly,

the referee found the testimony presented by the employer to be more credible than that presented by claimant. We find that there is substantial evidence contained in the record to support this finding.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 18th day of August, 1989, the order of the Pennsylvania Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.