# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dietz (deceased) by :
Judith Dietz, :
     Petitioner :
         :
     v. : No. 2051 C.D. 2014
         : Submitted: May 1, 2015
Workers' Compensation Appeal :
Board (Lower Bucks County Joint :
Municipal Authority), :
     Respondent :


BEFORE:  HONORABLE BERNARD L. McGINLEY, Judge
        HONORABLE MARY HANNAH LEAVITT, Judge
        HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT           FILED: August 14, 2015


    Judith Dietz (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying her petition for fatal claim benefits for the death of her husband, Robert Dietz (Decedent), which occurred while he was on the job. The Workers' Compensation Judge (WCJ) had granted, on remand, the fatal claim petition, finding a causal connection between Decedent's long day of work and his fatal heart attack. The Board reversed because it concluded that the evidence did not establish the requisite causal connection. Concluding that the Board erred, we now reverse.

    Decedent was employed by the Lower Bucks County Joint Municipal Authority (Employer) as a field maintenance worker for 20 years. His job

involved heavy labor. On November 7, 2007, at the age of 48, Decedent suffered a fatal heart attack while on the job.

Claimant filed a fatal claim petition alleging that Decedent's work caused his heart attack and death. Claimant sought fatal claim benefits for herself and her minor child.[1] Employer filed an answer denying liability. The petition was assigned to a WCJ, who held a hearing at which Claimant and Employer presented evidence.

Claimant testified that Decedent's field maintenance job was a physical job that included jackhammering to dig up the road, repairing water main breaks and cutting tree roots out of the sewer system. Claimant testified that Decedent frequently worked more than 40 hours per week and was always on-call. Decedent performed the same work duties during the 13 years he and Claimant were married.

November 7, 2007, began as a normal day. Decedent left the house at 6:00 a.m., as usual, and began work at 7:00 a.m. At 9:35 p.m., Decedent called Claimant to tell her that he and the other crew members were still working but that the job would likely soon be finished. Claimant testified that Decedent told her on the telephone that he had been doing roadwork and jackhammering for hours. Decedent told Claimant that he and his co-workers were tired because they had been "out there" at the job site for a long time. Notes of Testimony, December 8, 2009, at 13 (N.T. ___).[2] Decedent made no other complaints and everything

---

[1] In the event of a work-related death, a widow with one child is entitled to an award of 60 percent of the decedent's wages and up to $3,000 for burial expenses. Section 307 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §561.

[2] Because this Court granted Claimant's application to proceed *in forma pauperis*, there is no reproduced record.

seemed normal during the conversation. At 10:45 p.m., one of Decedent's co-workers came to the house and took Claimant to the hospital, where she learned that Decedent had died of a heart attack after collapsing on the job.

Regarding Decedent's health, Claimant testified that Decedent smoked a pack of cigarettes a day during their marriage. In 2004 or 2005, Decedent's family doctor had ordered a stress test, but Decedent was not diagnosed with heart disease. Decedent had been taking medication for high cholesterol for approximately one year. Decedent was six feet, two inches tall and weighed 200 to 210 pounds.

Following Claimant's testimony, Employer stipulated on the record that Decedent's heart attack occurred in the course of his employment. However, Employer also specified it was not stipulating that the heart attack was caused by his employment. The WCJ asked whether the matter was "becoming a medical issue at this point" and Employer's counsel responded that it was. N.T., March 11, 2010, at 6.

Claimant presented the deposition testimony of Larry A. Wolk, M.D., who is board certified in emergency medicine and thoracic surgery, which includes cardiac surgery. To ascertain Decedent's cause of death, Dr. Wolk reviewed Decedent's medical records, the death certificate[3] and Claimant's testimony. Dr. Wolk gleaned from the emergency room records that Decedent collapsed at work and was in full cardiac arrest when first responders arrived. Despite extensive efforts both at the scene and at the hospital, Decedent could not be resuscitated. There was no autopsy.

---

[3] Claimant submitted the death certificate into evidence. The cause of death is listed as "presumed natural causes." Exhibit C-1.

The medical records showed that in 2002, Decedent was diagnosed with mild narrowing of the arteries in his legs that did not require treatment. In May 2002, Decedent went to the hospital complaining of chest pain. A stress echocardiogram from June 18, 2002, did not reveal evidence of coronary artery disease. Decedent returned to the hospital with chest pain in August 2002 and was diagnosed with acute chest wall pain caused by a viral illness, not a cardiac problem. Dr. Wolk did not have medical records from 2002 to 2007.[4] Dr. Wolk understood from Claimant's testimony that Decedent did not have any other chest pain complaints or treatment for cardiac issues during that time.

Dr. Wolk testified that Decedent's death resulted from a fatal cardiac dysrhythmia induced by a sudden heart attack. Dr. Wolk explained that a sudden heart attack occurs when there is a sudden blood clot in an artery of the heart. Conditions such as cold weather, stress and physical labor all cause a release of adrenaline that tends to cause the blood to thicken. This, coupled with a small tear in the lining of the heart artery caused by physical labor, leads to sudden clotting and a heart attack.

Dr. Wolk noted that Claimant described Decedent's general job requirements as involving strenuous physical labor, including the operation of a jackhammer. He also understood that Decedent had worked a very long day before his heart attack occurred. Dr. Wolk opined that Decedent's long hours of physical labor caused his fatal heart attack. Dr. Wolk did not see anything else in the medical records that would have caused the heart attack. Thus, but for his long workday, Decedent would not have had a fatal heart attack on November 7, 2007.

---

[4] Decedent's family doctor failed to supply the medical records, stating that he had lost them in a move.

In opposition to Claimant's fatal claim petition, Employer submitted the deposition testimony of Walter Schwartz, D.O., who is board certified in internal medicine with a focus on cardiology. Dr. Schwartz reviewed Decedent's medical records as well as the testimony of Claimant and Dr. Wolk. The records showed that as of 2000, Decedent had peripheral artery disease in his legs, which is a hardening of the arteries that restricts blood flow. Decedent's doctor advised him to stop smoking at that time. Dr. Schwartz testified that it is very common for someone with peripheral artery disease also to have coronary artery disease. Decedent complained of chest pain in 2002 and underwent a cardiac stress test. Dr. Schwartz viewed the test results as valueless because pain and cramping in Decedent's legs prevented him from completing the test.

Dr. Schwartz understood from the emergency room records that Decedent had collapsed while working on a water main. Dr. Schwartz opined that Decedent had coronary artery disease and died as a result of an acute narrowing of a myocardial blood vessel or vessels resulting in ventricular fibrillation. Dr. Schwartz suspected that ruptured cholesterol plaque caused a blockage of the left main coronary artery which is also known as the "widow maker." Dr. Schwartz Dep. at 43.

Dr. Schwartz identified the following heart attack risk factors in Decedent's medical records: a family history of coronary artery disease (father); Decedent's peripheral artery disease; elevated cholesterol and blood fats; long history of heavy smoking; and weight. Dr. Schwartz testified that these combined risk factors gave Decedent a 19 percent chance of having a fatal heart attack, and he did. Dr. Schwartz acknowledged that Decedent had a strenuous job. However, Dr. Schwartz opined that Decedent's death was not caused by his job duties

5

because he had been performing the same job for 20 years. There was nothing unusual about Decedent doing heavy work for long hours and no evidence that he was doing anything that day which would have caused additional stress on his heart. Dr. Schwartz opined that the heart attack was bound to happen, explaining:

> This could have happened at home. This could have happened in his sleep or while he was driving. This was going to happen sooner or later. It was just serendipitous that it happened while he was working.

Dr. Schwartz Dep. at 23. However, when asked if Decedent would have had the fatal coronary episode had he been home in bed instead of working at 9:30 p.m. on November 7, 2007, Dr. Schwartz replied:

> He could or could not have had it at that particular time. But he was going to have a heart attack at some point in time.

Dr. Schwartz Dep. at 35.

The WCJ credited Claimant's testimony except for her claim that Decedent did not have any ongoing chronic condition, noting that Decedent was being treated for high cholesterol.[5] The WCJ credited Dr. Schwartz over Dr. Wolk and found that Decedent's heart attack was not causally related to his job. The WCJ found the following to be significant: (1) Decedent had multiple non work-related risk factors; (2) it was not unusual for Decedent to work extra hours; and (3) there was no evidence of an increased demand on Decedent's heart on the day of his fatal heart attack. WCJ Decision, April 27, 2011, at 4; Finding of Fact No. 12b. Based on these findings, the WCJ concluded that Claimant failed to prove

---

[5] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

6

that the heart attack was causally related to Decedent's job and denied the fatal claim petition.

Claimant appealed, and the Board vacated and remanded "for reconsideration of the credibility determinations." Board Adjudication, July 19, 2012, at 1. The Board held that the WCJ erred by requiring Claimant to produce evidence that Decedent's activity on the day of the heart attack was more strenuous than usual. Under the correct standard, a claimant need only prove a connection between the decedent's employment and his death; showing a greater than normal exertion is unnecessary. *Workmen's Compensation Appeal Board v. Bernard S. Pincus Company*, 388 A.2d 659 (Pa. 1978).

On remand, the WCJ reconsidered the evidence using this standard and granted the fatal claim petition. The WCJ credited Dr. Wolk's testimony and found that Decedent's long workday caused the fatal heart attack. The WCJ acknowledged that details of Decedent's activities on his last workday are scant but found that additional details are unnecessary because Decedent's regular job duties required strenuous labor. The WCJ found that Decedent's statement to Claimant that he was tired because he had been on the job site for a long time corroborated the fact that Decedent was physically stressed by the length of the workday. The WCJ explained:

> What this [WCJ] did not fully appreciate in the prior decision was the role that the length of the workday played in precipitating the heart attack. On further review, this [WCJ] finds Dr. Wolk's testimony on causation to be credible and persuasive that working on a field maintenance crew for 14+ hours caused the cardiac event and death of [Decedent]. The decedent was clearly predisposed to a heart attack, but it was the long workday that stressed his body and triggered the event.

WCJ Decision, February 27, 2013, at 5; Finding of Fact No. 16.

7

Employer appealed, and the Board reversed. The Board determined that the WCJ's finding that Dr. Wolk believed the long workday caused the heart attack was unsupported because Dr. Wolk actually opined that cold weather, stress, physical labor and the long workday all combined to induce the heart attack. The Board also determined that Dr. Wolk's opinion of causation was unsupported because neither he nor Claimant knew exactly what duties Decedent performed on the day of the heart attack and there was no witness testimony from co-workers specifying Decedent's actual physical activities prior to the heart attack. Claimant then petitioned for this Court's review.[6]

On appeal, Claimant asserts that the Board erred in reversing the grant of fatal claim benefits. Claimant argues that she did meet her burden of proving causation because her evidence, which the WCJ credited, showed that Decedent's 14-hour workday doing physical labor in field maintenance induced his fatal heart attack. Employer responds that Claimant failed to establish causation because there was no record evidence as to the weather conditions on the date in question or what work Decedent performed that could support Dr. Wolk's opinion that the long day, cold weather, stress and physical labor precipitated Decedent's heart attack. We agree with Claimant.

Just as with any other type of injury, in order for a decedent's fatal heart attack to be compensable, the claimant must establish that the heart attack was causally related to the decedent's employment. *Yantos v. Workmen's*

---

[6] This Court's standard of review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

*Compensation Appeal Board (Vulcan Mold & Iron Company)*, 563 A.2d 232, 236 (Pa. Cmwlth. 1989).  If the causal connection is not obvious, the connection must be established by unequivocal medical testimony.  *Lamoreaux v. Workmen's Compensation Appeal Board (Celotex Corporation)*, 497 A.2d 1388, 1390 (Pa. Cmwlth. 1985).

The WCJ granted the fatal claim petition, on remand, based on the medical opinion of Dr. Wolk.  In reversing the WCJ, the Board mischaracterized Dr. Wolk's testimony about cold weather and the role it played in Decedent's heart attack.  When describing changes in the blood that set the stage for a heart attack, Dr. Wolk explained generally that

> *[c]old weather, stress, and just physical labor all induce what they call catecholamine release, which is adrenaline release that tends to thicken the blood.*  And on top of a small - - what they call intimal injury or a small tear in the lining of the heart precipitates the sudden clotting of platelets and other factors in the blood that causes the blood to clot and then it causes sudden heart attack.

Dr. Wolk Dep. at 15-16 (emphasis added).  Dr. Wolk listed three different factors that can lead to thickened blood, but he did not state that cold weather was a necessary component for Decedent's heart attack.  This is borne out by his subsequent testimony specifically assigning the cause of Decedent's heart attack to his "long hours of working" over the course of "an extremely long day."  Dr. Wolk Dep. at 20, 21.  Dr. Wolk testified:

> [Decedent's] duties I'm sure included physical activity. Certainly using a jackhammer…requires a large amount of physical energy.  The energy plus whatever other duties he had plus the long day I'm sure increased the level of catecholamine release in his body.  And by doing that, as I said earlier, induced a milieu where he had thrombogenic blood.  And all those things together combined to induce the heart attack.

9

Dr. Wolk Dep. at 22. Thus, Dr. Wolk's testimony supports the WCJ's finding that "working on a field maintenance crew for 14+ hours caused the cardiac event and death of [Decedent]." WCJ Decision, February 27, 2013, at 5; Finding of Fact No. 16.

Nevertheless, the Board denied the fatal claim petition because neither Dr. Wolk nor Claimant knew exactly what duties Decedent was performing prior to his heart attack. Claimant argues that her evidence was sufficient to establish Decedent's job duties and that the Board erred in holding that evidence of Decedent's specific duties on the day of his heart attack was required. We agree.

An expert witness is permitted to base an opinion upon facts of which he has no personal knowledge, so long as those facts are supported by evidence in the record. *Yantos*, 563 A.2d at 235. Our Supreme Court has explained that "where a decedent was performing his or her *usual job assignment* at the time of the fatal heart attack, and the connection between the work and the heart attack was supported by competent medical testimony, decedent's claimant was entitled to compensation." *Bernard S. Pincus Co.*, 388 A.2d at 663 (emphasis added). Where exertion leads to a fatal heart attack, there is no need to pinpoint the exact work duty which caused the exertion. *Plumbers Contractors, Inc. v. Workmen's Compensation Appeal Board (Lewellyn)*, 402 A.2d 555, 557 (Pa. Cmwlth. 1979). In other words, "[i]t is not necessary to prove and identify the precise work details which caused a heart death that resulted from decedent's exceptional work activity." *Pennsylvania State Oral School v. Workmen's Compensation Appeal Board (Gerek)*, 475 A.2d 175, 178 (Pa. Cmwlth. 1984).

*Lewellyn* and *Gerek* are instructive. In *Lewellyn,* the decedent was told to walk 150 yards to retrieve a plastic jug weighing a few ounces shortly after

10

he arrived at work. The decedent was later found lying on the ground with the plastic jug nearby and shortly thereafter was pronounced dead of a heart attack. The emergency room doctor reported that the decedent's co-worker informed him that the decedent had been unloading a fuel tank when he fell to the ground. Noting that it was unclear exactly what the decedent was doing when he collapsed, this Court held it was of no moment, explaining:

> The matter which is not clear is not whether [the heart attack] was caused by exertion, this is clear; rather what is not clear is what the exertion could have been. This need not be decided for the overwhelming circumstantial evidence cries out that whatever the exertion was it occurred as part of the work activity and was the cause of the heart attack which resulted in his death. This is more than sufficient to support the award.

*Lewellyn*, 402 A.2d at 557.

In *Gerek*, the medical expert witness was given a hypothetical that the decedent worked in a hot boiler room and was required to push a wheelbarrow loaded with coal, shovel the coal into the boiler, and rake, spread and remove ashes from the boiler. The decedent was found lying outside the boiler room door, expired. Based on the hypothetical, the doctor opined that the decedent's death from an acute coronary thrombosis was causally related to his employment. This Court held that this testimony was sufficient to establish causation; "precise work details" causing the death were not necessary. *Gerek*, 475 A.2d at 178 (citing *Lewellyn*, 402 A.2d at 555).

Here, Claimant testified to Decedent's regular job duties, which included using a jackhammer to tear up roads, working on water mains and cutting tree roots out of the sewer system. It is undisputed that Decedent had a very physical job. Decedent did not alternate between days of heavy duties and days

11

performing light office duties.  His daily job involved strenuous physical activity.  On November 7, 2007, after an extremely long day of work, he collapsed beside the water main.  This evidence is sufficient to support Dr. Wolk's opinion that the long workday and physical activity caused the fatal heart attack.

The WCJ correctly noted that although the details of Decedent's final workday are scant, such details are unnecessary because of the nature of Decedent's job.  The Board erred in requiring Claimant to present evidence from Decedent's co-workers on exactly what happened when Decedent collapsed.[7]  Applying the Board's proffered burden, a claimant could not prevail on a fatal claim petition where the decedent was working alone because the claimant would be unable to prove definitively what the decedent was doing before the heart attack.  The overwhelming circumstantial evidence in this case shows that exertion from Decedent's regular work activities over the course of a 14-hour workday caused his heart attack.  "Precise work details" were not required.

Accordingly, the order of the Board is reversed.

_____
MARY HANNAH LEAVITT, Judge

---

[7] The Board relied upon this Court's decisions in *Villanova University v. Workers' Compensation Appeal Board (Mantle)*, 783 A.2d 366 (Pa. Cmwlth. 2001), and *Craftsmen v. Workers' Compensation Appeal Board (Krouchick)*, 809 A.2d 434 (Pa. Cmwlth. 2002). In *Mantle*, there was testimony from the decedent's co-worker about what the decedent was doing when he had a heart attack (walking 400 yards) and in *Krouchick* co-workers testified about the decedent's deteriorating condition while performing his work duties.  In both cases the Court held that this factual evidence supported the medical experts' opinion of causation.  However, the Court did not hold that eye witness testimony of a decedent's activities prior to a heart attack is always necessary.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dietz (deceased) by : 
Judith Dietz, : 
    Petitioner : 
        : 
    v. :  No. 2051 C.D. 2014
        : 
Workers' Compensation Appeal : 
Board (Lower Bucks County Joint : 
Municipal Authority), : 
    Respondent : 

# **O R D E R**

AND NOW, this 14th day of August, 2015, the order of the Workers' Compensation Appeal Board dated October 15, 2014, in the above-captioned matter is hereby REVERSED.

          _____
          MARY HANNAH LEAVITT, Judge