# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Igor Dnistranskiy,             :
                Petitioner     :
                              :
      v.                     :    No. 414 C.D. 2023
                              :    SUBMITTED: April 11, 2024
Brite Logistics, Inc. (Workers'    :
Compensation Appeal Board),      :
                Respondent    :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: May 10, 2024**


Claimant, Tetyana Dnistranska, petitions for review of an order of the Workers' Compensation Appeal Board, which affirmed the decision of the Workers' Compensation Judge (WCJ) denying her fatal claim petition based on the death of her former husband, Igor Dnistranskiy (Decedent).[1] Upon review, we affirm.

Decedent suffered a heart attack while at work on March 15, 2017, and passed away that same day. Later that year, Claimant filed a fatal claim petition seeking benefits on behalf of Decedent's four children alleging that his death "from 'cardiovascular disease' was a result of his employment duties as a truck [driver]" with Brite Logistics, Inc. (Employer). Certified Record (C.R.), Item No. 6 at 3. In

---

[1] The caption before the WCJ and the Board incorrectly lists Igor Dnistranskiy as the Claimant when he is, in fact, the Decedent. *See* Certified Record (C.R.), Item No. 9 at 1. We will refer to the parties throughout by their proper designations.

September 2018, after multiple hearings, WCJ Timothy Bulman circulated an opinion granting Claimant's motion to withdraw the petition without prejudice.

Claimant subsequently filed the instant fatal claim petition on March 10, 2020, again on behalf of Decedent's children. The petition acknowledges that Decedent died from cardiovascular disease and asserts that his death occurred in the course and scope of his employment. C.R., Item No. 2 at 1. Employer filed an answer denying that it employed Decedent within the meaning of the Workers' Compensation Act,[2] and denying that he suffered a work-related injury or that his death arose during the course and scope of his employment. C.R., Item No. 4 at 1.

At a hearing conducted on July 15, 2020, WCJ Tina Maria Rago granted Employer's motion to dismiss the petition because Claimant failed to provide any medical documentation as previously ordered. C.R., Item No. 6 at 4. Claimant appealed and the Board reversed and remanded. C.R., Item No. 9 at 8. The Board acknowledged that a WCJ has discretion to control the docket by ordering the parties to litigate a case in a timely manner, and that such discretion includes dismissal for lack of prosecution. *Id.* at 4, 6. Here, however, the WCJ abused her discretion in dismissing the case because Claimant's counsel represented that his attempts to obtain the necessary medical evidence were hindered by an illness and death of a family member and the COVID-19 pandemic, which was just beginning. *Id.* at 6. This was not a situation where there were several warnings and Claimant's counsel did not try to move the case forward or explain the reason for the delay, which could support the harsh remedy of putting Claimant out of court. *Id.* Therefore, the Board remanded for the WCJ to conduct further proceedings and to set a reasonable time schedule for Claimant to present her case. *Id.* at 8.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

2

On remand, Claimant testified that she and Decedent were married approximately 15 years prior while living in Ukraine. They moved to the United States in 2010 and divorced in 2014. Claimant had four children with Decedent, and he continued to provide support for the children after the divorce. The two reconciled and had been living together again prior to Decedent's death. According to Claimant, Decedent did not have any type of cardiac condition and did not take medication on a regular basis. C.R., Item No. 11, Findings of Fact (F.F.) 5.

Claimant testified that while Decedent was a truck driver, he typically did not travel long distances and did not stay away overnight. She spoke to Decedent several times on the day he died and then spoke to someone from Employer's office who asked if Decedent took any medications. Later that day she spoke with a doctor, but she was unable to recall the conversation as she was "panicked." C.R., Item No. 11, F.F. 5.

In support of the fatal claim petition, Claimant presented Decedent's death certificate issued by the Cook County Clerk Vital Records Chicago, Illinois. C.R., Item No. 23; C.R., Item No. 11, F.F. 6. The death certificate lists Decedent's cause of death as "hypertensive arteriosclerotic cardiovascular disease." C.R., Item No. 23. *See also* C.R. Item No. 11, F.F. 6.

Claimant also presented the deposition testimony of Nicholas L. DePace, M.D., who is board certified in internal medicine and cardiology. Dr. DePace was not Decedent's treating physician and based his opinion on his records review. Decedent's records, including the autopsy results, revealed that Decedent had high blood pressure (hypertension) that was untreated by medication, which lead to cardiomegaly (an enlarged heart). Dr. DePace also acknowledged that Decedent had coronary artery disease, including "a ten[-]point narrowing of the main artery to

3

his left ventricular myocardium, the left anterior descending artery[ LAD.]" C.R., Item No. 11, F.F. 7. Dr. DePace stated that this "pinpoint clogging of an artery is not normal in a 50-year-old individual who was not a heavy smoker," but he also acknowledged not knowing much in the way of other potential risk factors for Decedent. *Id.* Decedent did complain of indigestion the day prior to his death. *Id.*

Dr. DePace explained that driving a tractor trailer is an extremely taxing, stressful job because of the attendant sleep deprivation, extensive driving, and fatigue, and the physical exertion associated with using a very large steering wheel and manually detaching the trailer. Dr. DePace opined, to a reasonable degree of medical certainty, that the physical exertion of driving the tractor trailer over more than a two-day period, with this being the first time Decedent had driven such a large vehicle, was sufficient to overtax his cardiac reserve and cause the ischemic event and sudden cardiac death. In short, Dr. DePace testified that Decedent's work duties as a tractor trailer driver for Employer were a substantial contributing factor in his death. C.R., Item No. 11, F.F. 7; *see also* C.R., Item No. 22, Notes of Testimony (N.T.) at 16.

On cross-examination, Dr. DePace acknowledged that it is known from the autopsy that "[D]ecedent was severely compromised from a cardiovascular perspective." C.R., Item No. 11, F.F. 7. He further agreed that Decedent's untreated hypertension was one of the risk factors which contributed to his coronary arteriosclerosis and the lesion in his LAD, and that this condition was not caused by his work activities. Dr. DePace went on to explain "that the pre[]existing conditions of uncontrolled hypertension which led to cardiomegaly, the coronary artery disease[,] and the lesion/plaque in the [LAD] were contributing factors to his death in a '[]chronic fashion. Not in an acute, triggering fashion, but in a chronic fashion.'"

4

*Id.* (quoting C.R., Item No. 22, N.T. at 23). Notably, Dr. DePace acknowledged that the job description of a tractor trailer driver he reviewed and relied upon was not one provided by Employer but rather obtained via the internet from the United States Bureau of Labor Statistics. C.R., Item No. 11, F.F. 7.

In opposition to the fatal claim petition, Employer presented the deposition testimony of Manoj Khandelwal, M.D., who is board certified in internal medicine, cardiology, and interventional cardiology. Dr. Khandelwal ascertained from his records review that Decedent was a truck driver with a history of untreated high blood pressure and smoking who, after being on the road for three days, suffered a cardiac arrest during a conversation with a coworker. Decedent was unable to be resuscitated and died. The autopsy revealed that Decedent had an enlarged heart, coronary artery disease, fluid in his lungs, pulmonary hypertension, and a history of silent heart attack. Dr. Khandelwal explained that Decedent had two of the three major risk factors for coronary artery disease – those being smoking and hypertension – and that he was also overweight. Decedent also complained of indigestion the day prior to his death, which is referred to as pre-infarction angina and is a known warning sign of a heart attack. C.R., Item No. 11, F.F. 10.

Dr. Khandelwal opined that there was no relationship between the work Decedent performed for Employer and the cardiac arrest causing his death. To the contrary, Decedent's death was caused by the above risk factors which caused his long-standing coronary artery disease and ultimately his cardiac arrest, which coincidentally happened while he was at work. Dr. Khandelwal further explained that the risk factors of smoking, obesity, and untreated hypertension had no relation to Decedent's work as a truck driver. He specifically rejected Dr. DePace's opinion that sleep deprivation was a contributing factor in Decedent's death, noting that it

5

goes against data that has been available in medical literature for decades. Dr. Khandelwal also rejected Dr. DePace's conclusion that driving a tractor trailer for long hours and turning a large steering wheel contributed to Decedent's death, stating that most heart attacks occur at rest and have nothing to do with stress, either physical or mental. Dr. Khandelwal indicated that there was no abrupt change in Decedent's driving or work duties in the days leading up to his death. C.R., Item No. 11, F.F. 10.

Employer also submitted the deposition testimony of Sandra Ramanauskas, who has worked as Employer's compliance director since July 2020. While she did not work for Employer at the time of Decedent's passing, she does have access to all of the drivers' paperwork and was able to obtain Decedent's daily logs for March 13, 2017 through March 15, 2017, which were entered into evidence. *See* C.R., Item No. 32. The logs demonstrate that Decedent drove for 6 hours on March 13, 2017, and was off duty starting at 9:30 p.m.; he started work at 10:00 a.m. on March 14, 2017, drove for 10 hours that day, and was off at 9:00 p.m.; and he began work at 7:00 a.m. on March 15, 2017, and drove a little over 2 hours before reaching Chicago, Illinois at approximately 1:00 p.m. *See id.*; *see also* C.R., Item No. 11, F.F. 8. Ms. Ramanauskas testified that these were the only three days Decedent worked for Employer. The load sheet documenting the information for this particular delivery states that it was "no touch," which Ms. Ramanauskas testified "means there [wa]s no assistance needed from the driver to handle this order." C.R., Item No. 11, F.F. 9.

The WCJ issued a decision and order denying the fatal claim petition, finding that Decedent's work activities were not a substantial contributing factor in his death. She based her decision upon the testimony of Dr. Khandelwal, which she

found to be credible and convincing and whose opinions she accepted over those of Dr. DePace. The WCJ noted that Dr. Khandelwal's opinions were consistent and supported by the medical records, in particular Decedent's autopsy findings. In contrast, Dr. DePace's opinion that Decedent's sleep deprivation from driving long distances contributed to his death was directly contradicted by his driver's daily logs. Dr. DePace's opinion regarding the physical activity involved in Decedent hitching and unhitching the tractor trailer was belied by the load sheet indicating that this was a "no touch" delivery. Dr. DePace also based his opinions on his belief that Decedent's work for Employer involved turning a large steering wheel to which he was not accustomed. However, Dr. DePace admitted that this information came from a generic occupational description, not from Employer, and there was no evidence in the record supporting these assumptions. In sum, Claimant's fatal claim petition was denied because she failed to sustain her burden of proof.[3] Claimant then appealed to the Board, which affirmed, and this appeal followed.

Claimant argues[4] that the Board erred in affirming the WCJ's decision because it "goes against the long[-]held Pennsylvania [l]aw with respect to heart attack causation." Claimant's Br. at 16. Claimant points to other decisions of this Court holding that the decedents' heart attacks were compensable where the individuals were engaged "in much less stressful [working] conditions[.]" *Id.*

---

[3] While the WCJ found the testimony of Claimant to be credible, she noted that it did not touch upon the ultimate issue which is medical in nature. The WCJ further credited the documentary evidence of the death certificate, the driver's daily logs for Decedent's trip from March 13-15, 2017, and the load sheet regarding that trip. Finally, the WCJ found the testimony of Ms. Ramanauskas to be credible and convincing regarding her search of Employer's business records to locate the driver's daily logs and the load sheet but disregarded her other testimony because Ms. Ramanauskas did not work for Employer at the time of Decedent's death and had no first-hand knowledge thereof. *See* C.R., Item No. 11, F.F. 11-16.

[4] We have reordered Claimant's arguments for ease of discussion.

7

In the specific context of a fatal claim petition, the surviving family member must demonstrate, by substantial evidence, the elements necessary to merit an award of workers' compensation benefits. *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011). These elements are "establishment of a work-related injury," "impact on the earning capacity of the employee," and the injury "was a substantial contributing cause in bringing about the death of that employee." *Id.* (quotation omitted). As this Court has further explained,

> [j]ust as with any other type of injury, in order for a decedent's fatal heart attack to be compensable, *the claimant must establish that the heart attack was causally related to the decedent's employment. Yantos v. Workmen's Comp*[.] *Appeal B*[d.] *(Vulcan Mold & Iron Co*[.]*)*, [] 563 A.2d 232, 236 ([Pa. Cmwlth. ]1989). If the causal connection is not obvious, the connection must be established by unequivocal medical testimony. *Lamoreaux v. Workmen's Comp*[.] *Appeal B*[d.] *(Celotex Corp*[.]*)*, [] 497 A.2d 1388, 1390 ([Pa. Cmwlth. ]1985).

*Dietz v. Workers' Comp. Appeal Bd. (Lower Bucks Cnty. Mun. Auth.)*, 126 A.3d 1025, 1030 (Pa. Cmwlth. 2015) (emphasis added). "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

Here, Claimant failed to meet her burden because the WCJ explicitly rejected the opinion of her medical expert as to whether Decedent's heart attack was causally related to his employment. The WCJ explained that Dr. DePace's opinion was "unsubstantiated or in direct contradiction to the factual evidence presented." C.R., Item No. 11, F.F. 17. For example, Dr. DePace opined that sleep deprivation

8

from Decedent driving the tractor trailer long distances was a substantial contributing factor in his death and was directly related to his job duties for Employer. However, the driver's daily logs demonstrate that Decedent slept, or at least was not driving, for 12 hours on the evening of March 13, 2017, and for 10 hours on the evening of March 14, 2017. Dr. DePace further opined that the hitching and unhitching of the load Decedent was hauling was a substantial contributing factor, yet there was no evidence that Decedent performed these tasks. In fact, the load sheet specifically stated that Decedent's delivery was to be "no touch," and the WCJ found the load sheet to be credible evidence. Dr. DePace did not speak to anyone in Decedent's family regarding either his job duties or his lifestyle, and instead based his opinion, in part, on a generic job description obtained from the internet rather than specific information provided by Employer. Finally, Dr. DePace acknowledged that Decedent's preexisting risk factors of untreated high blood pressure, smoking, and being overweight had nothing to do with his employment, and that the autopsy revealed Decedent "was severely compromised from a cardiovascular perspective." C.R., Item No. 11, F.F. It is well established that a WCJ is "the final arbiter of credibility" and may accept or reject the testimony of any witness, including a medical expert, in whole or in part. *Yantos*, 563 A.2d at 236. Moreover, when "presented with conflicting medical evidence, [a WCJ] may accept the testimony of one medical witness over that of another." *Id.* (citation omitted). The WCJ's credibility determination with respect to Dr. DePace is supported by substantial evidence, and we will not disturb it on appeal.

Claimant further argues that the WCJ's decision is not reasoned because the WCJ relied upon incompetent evidence. Specifically, Claimant asserts

9

that Dr. Khandelwal's opinions were based on a false premise and inaccurate information, and as a result his opinion is not competent.

First, we note that the burden in this fatal claim petition rests with Claimant, *see, e.g.*, *Dietz*, 126 A.3d at 1030 (citing *Yantos*), and Employer was not required to present expert medical testimony in opposition thereto. The fact that Claimant failed to meet her burden is dispositive. *See Stalworth v. Workers' Comp. Appeal Bd. (Cnty. of Delaware)*, 815 A.2d 23, 29 (Pa. Cmwlth. 2002), *appeal denied*, 839 A.2d 355 (Pa. 2003) (noting that because the claimant, not the employer, had the burden of proof, the issue of the competency of employer's medical expert's testimony was irrelevant); *see also Alltel Pa., Inc. v. Workers' Comp. Appeal Bd. (Kovalik)* (Pa. Cmwlth., No. 1643 C.D. 2009, filed January 7, 2010) (where the claimant did not meet his burden of proof it was unnecessary for the WCJ to reach a determination as to the credibility of the employer's expert).[5]

Despite Claimant's argument to the contrary, Dr. Khandelwal's testimony was clear and unequivocal, and it is Claimant's argument that takes Dr. Khandelwal's statements out of context. *See Inservco Ins. Servs. v. Workers' Comp. Appeal Bd. (Purefoey)*, 902 A.2d 574, 579 (Pa. Cmwlth. 2006) (when determining whether expert testimony is equivocal "we must examine the entire testimony of a witness as a whole and not rely upon a fragment of testimony removed from its context") (citing *Stalworth*, 815 A.2d at 28). Dr. Khandelwal explicitly testified, to a reasonable degree of medical certainty, that Decedent's death was unrelated to his work. Instead, Dr. Khandelwal opined that Decedent's fatal heart attack was caused by his long-standing, preexisting conditions of untreated high blood pressure,

_____

[5] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

smoking, and being overweight. Dr. Khandelwal clearly stated that these preexisting conditions had nothing to do with Decedent's employment, a fact with which Dr. DePace agreed. Dr. Khandelwal's opinion is supported by Decedent's medical records and autopsy report which show a ten-point blockage in his LAD, an enlarged heart, and a history of silent heart attack.

Given the above, the Board did not err in affirming the decision of the WCJ. Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Igor Dnistranskiy, : 
                  Petitioner : 
                   : 
          v. : No. 414 C.D. 2023
                   : 
Brite Logistics, Inc. (Workers' : 
Compensation Appeal Board), : 
              Respondent : 

# **O R D E R**

AND NOW, this 10th day of May, 2024, the Order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita